Morris v. Beardsley.

ANDREW MORRIS *vs.* ALONZO T. BEARDSLEY AND OTHERS.

Fairfield County, Oct. T., 1886.    PARK, C. J., CARPENTER, PARDEE,
            LOOMIS and GRANGER, Js.

A piece of land on the sea shore was divided between two distributees of an
    estate by a line extending through the upland to the shore line but not
    running through the flats between high and low water mark.   The
    shore was a convex curve.   Held—1. That the law supplied the rule
    for the division of the flats.   2. That by that rule the line was to run
    perpendicularly to the shore line from the point of division at that
    line to low water mark.   3. That in determining the curve of the
    . shore its general trend for a considerable distance was to be considered,
    omitting to notice small indentations and projections.

[Argued October 27th, 1886—decided January 26th, 1887.]

ACTION for trespass to land; brought to the Court of
Common Pleas in Fairfield County.   Facts found and case
reserved for advice.   The general principles laid ·down by
the court will be sufficiently understood from the opinion :
the special facts could not be understood without a map.

*C. Thompson* and *A. M. Tallmadge*, for the plaintiff.

*D. F. Hollister*, and *R. E. DeForest*, for the defendants.

PARDEE, J.   Land of the plaintiff adjoins that of the
defendant.   The former complains that the latter has tres-
passed by driving piles upon his land.   The two pieces of
land are a part of the shore .of Bridgeport harbor ; in 1837
both formed a part of the intestate estate of Ira Curtis,
deceased, which included upland.   In the distribution the
part of the shore now owned by the plaintiff was described
in these words, viz :—" Also the westerly half of the water
lot lying south of the above described piece ; " the " above
described piece " being a portion of the upland.   The deed
of the distributee to a predecessor of the plaintiff in title
describes the upland and shore together as follows, viz :—

" The homestead of E. Wilcox, in quantity one hundred and thirty-five rods, north in part on land of Ruth Ann Curtis and in part on land of Lewis Curtis, east in part on highway five rods and twelve and a half links, in part on land of Robert Whittemore, in part on land of Lewis Curtis, south in part on land of Samuel Whittemore, and in part on the channel of Bridgeport harbor, west in part on highway and in part on Benjamin Pilgrim, including water lot on south end of said piece." The deed to the plaintiff describes his shore lot in the following language, viz.:—" A certain piece of land situated in East Bridgeport, in said town of Bridgeport, bounded on the channel of Bridgeport harbor, north on land this day deeded to said Andrew Morris, the eastern and western boundaries running parallel with the boundaries of the upland, the same being a water lot in front of land this day deeded to said Andrew Morris." In the distribution the lot now owned by the defendants was described as follows, viz.:—" Also the east half of the water lot belonging to said estate lying southerly of the house of Samuel Whittemore." The distributee granted and described it as " south of Samuel Whittemore, and set off to me from the estate of my father as the easterly water lot, north and east on highway, west on water lot of Thomas C. Wordin, and south on channel of harbor or river." The deed from Ali Andrews to the defendants describes their lot as follows, viz.:—" A certain water lot so called lying in East Bridgeport, south of the homestead formerly occupied by Samuel Whittemore, * * * east on Pembroke street, south on the channel of harbor or river, and west on the property of Andrew Morris ; meaning hereby to convey all my right, title and interest in all that piece or parcel of land and mud flats deeded to me by Lewis Curtis, * * * the said Lewis Curtis having obtained title to the same by distribution from the estate of his father * * * ." The location of the dividing line has not been affected by adverse occupancy; and as the distribution is the origin of both titles, to it we first look for light on the question before us. We there find one lot described as the " westerly half of the water

lot lying south of the above described piece ; " the other as the " east half of the water lot belonging to said estate, lying southerly of the house of Samuel Whittemore." That is, one is on the east, the other is on the west side of the dividing line. But no monument or mark is named at either terminus; no course is specified; no measurement is given by which the surveyor can locate it.

Of course the owner of a tract of the shore can divide, convey and establish dividing lines as he may find purchasers. But if the owner of upland divides it into two pieces, each having a sea front, and conveys to different grantees, and also conveys to each the appurtenant tract of the shore, and says no more about the dividing line, the parties have joined in leaving its precise location to be determined by the rules of law. Of course there was ownership of upland and the adjacent shore before any highway existed. The rule of law which established separating lines between the proprietors of the shore was in operation then as now. It is not in the case that any one of these proprietors has ever made a conveyance which interfered with the continual operation of such rule ; and by it the present proprietors must be governed, as have been all their predecessors. By the distribution the distributees acquired no right to interfere with the operation of it; therefore they could convey no such right to any person. The laying out of highways did not affect it. If a way was laid across the portion of the shore belonging to any individual he still had access to the sea across it; if barred he had pecuniary compensation for the loss ; land taken was paid for; there remained to him his previous right on either side thereof; and the line of separation between him and an adjoining proprietor remained unchanged and subject to the rule. If since the distribution any one holding title there under him, conveyed shore rights and bounded them upon a highway, whatever may be the effect of the limitation as between him and his grantee, it did not move the separating line between him and adjoining proprietors upon the other side having title originating in the same distribution. As has been said, in

1837 there belonged to the estate of Ira Curtis, deceased, a piece of land upon Bridgeport harbor with the appurtenant shore. Upon the map this piece of land is shown to be a small portion of a projection of land into the sea; the high water line being a segment of a curve; speaking of course of the general trend of it, taking a considerable distance into account and omitting to notice small indentations and projections. For the purposes of this case we may regard this curved line as crossing Stratford avenue near the Yellow Mill bridge, and again at a point some distance west of the intersection of East Main street with the same avenue. Assuming that the piece of upland was divided and the portions set to different distributees, and also to each the right in the shore appurtenant to each, without more, as the result of the rule of common law applicable to this particular case, the line separating the shore rights, starting from the point where the line separating the pieces of upland intersects the convex high water line, would leave that line by a right angle, (an expression which is sufficiently accurate to convey our meaning,) and proceed directly to an intersection with the low water line. Of course on convex lines of high and low water the latter would be the longer; each upland proprietor has his full measure of right upon each; whether he reaches the channel by a longer or shorter line is the accident of his location, and he must accept the result.

The case does not furnish sufficient data for specific advice to the Superior Court. We advise that court to obtain these data, and establish the separating line between the parties according to the above rule.

In this opinion the other judges concurred.