WATER STREET ASSOCIATES LIMITED PARTNERSHIP
v. INNOPAK PLASTICS CORPORATION ET AL.
(14912)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and PALMER, Js.

Argued June 8—decision released August 16, 1994

*Jeffrey J. Mirman,* for the appellants (defendant United Progress, Inc., et al.).

*Thomas J. Riley,* with whom, on the brief, was *Robert D. Tovin,* for the appellee (plaintiff).

CALLAHAN, J. The appeal in this declaratory judgment action[1] requires us to review the trial court's determination of the boundary line separating the areas of Stonington Harbor (harbor) over which the plaintiff, Water Street Associates Limited Partnership, and the defendant, Harbor Point Associates,[2] claim littoral

---

[1] See General Statutes § 52-29 and Practice Book §§ 389 through 394.

[2] The original defendant in this action was Innopak Plastics Corporation, which owned the property in question when the plaintiff filed the complaint. By warranty deed dated January 20, 1989, United Progress, Inc., doing business as Harbor Point Associates, purchased the property from Innopak Plastics Corporation and presently is the only remaining defendant. We therefore refer to Harbor Point Associates as the defendant.

rights.[3] The defendant appealed to the Appellate Court from the trial court's judgment determining the location of the boundary line. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The areas of the harbor involved in this appeal and the littoral boundary as determined by the trial court are depicted on the defendant's exhibit C, a map entitled, "Stonington Harbor Shoreline and Littoral Line Between Property of Water Street Associates Limited Partnership and Property of Harbor Point Associates" prepared by Total Technology, Inc., and dated October 22, 1991. The map is reproduced on the following page. It is undisputed that both the plaintiff and the defendant possess littoral rights in the harbor appurtenant to their land.

The plaintiff is the owner of three parcels of real estate located in the town of Stonington on the west side of Water Street and on the east side of the harbor. Approximately ninety lineal feet of the plaintiff's property is water frontage facing westerly into the harbor.[4] The plaintiff operates two restaurants on its property and maintains a dock extending from its westerly shore into the harbor, where patrons of the restaurant may secure their boats.

The defendant's property is located between Water Street and the harbor and abuts the southern border of the plaintiff's property. There is a factory building located on its property and it has approximately 530 lineal feet of frontage facing westerly on the harbor.

[3] Black's Law Dictionary (6th Ed. 1990) defines "littoral rights" as: "Rights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian)."

[4] The plaintiff's land, because of its configuration, also has approximately 265 feet of water frontage on its northerly side and approximately 135 feet of water frontage on its southerly side.

STONINGTON HARBOR

(Town Dock)

(Plaintiff's Dock)

(Breakwater)

(Trial Court's Boundary Line)

Immediately to the south of the defendant's property is a breakwater, which is a navigational aid constructed by the federal government and completed in 1832. The breakwater extends approximately 525 feet in a northwesterly direction into the harbor. The town of Stonington owns property known as the "Town Dock" located at the northerly end of the harbor. The Town Dock extends westerly into the harbor and has been in existence for more than 100 years in its present configuration.

Boats in the harbor have access to Fisher's Island Sound, located to the south of the harbor, through a navigation channel maintained by the federal government. The channel is located to the west of the plaintiff's dock and the breakwater, and runs from the Town Dock at the northern end of the harbor into Fisher's Island Sound. Most of the water located to the west of the defendant's shoreline between the bearing N 60° 30′ 34″ E, and the breakwater is at least ten feet deep at mean low water. The remainder of the water in that area is eight to ten feet deep at mean low water, except for water immediately adjacent to the shoreline and the breakwater.

The plaintiff brought this action seeking a declaratory judgment to determine the location of the boundary line between the parties' respective littoral areas. After hearing testimony and reviewing maps of the harbor and the adjacent land area submitted as exhibits, the trial court found that the shape of the relevant shoreline was concave. The court also found that the arc defining the cove extended along the shoreline from the westerly end of the Town Dock to the base of the breakwater and that the chord of this arc runs along the bearing S 29° 29′ 26″ E, based on the Connecticut State Grid System.

The court then rendered judgment determining the littoral boundary line to be a line originating at the

upland boundary line between the parties' property at the high water mark and perpendicular to the chord of the arc. The line, as determined by the court, extends southwesterly from the parties' upland border at the high water mark and runs along the bearing N 60° 30′ 34″ E, based on the Connecticut State Grid System. Although the defendant claimed that this boundary line creates an inequitable distribution of littoral rights between the parties, the trial court denied the defendant's request to modify the location of the littoral boundary line. This appeal by the defendant followed.

## I

The defendant first claims that the trial court improperly determined that the shape of the shoreline was concave, and not a straight line. We disagree.

It is well established that while the state, as the representative of the public, is the owner of all land between the high and low water marks upon navigable waters, owners of adjoining upland have the exclusive, yet qualified, right and privilege to dig channels and wharf out from the owner's land in a manner that does not interfere with free navigation. *Lovejoy v. van Emmenes,* 177 Conn. 287, 290–91, 416 A.2d 1192 (1979); *Shorehaven Golf Club, Inc. v. Water Resources Commission,* 146 Conn. 619, 624, 153 A.2d 444 (1959); *Rochester v. Barney,* 117 Conn. 462, 469–70, 169 A. 45 (1933). Nevertheless, when a party's upland property adjoins that of another, "each must exercise his [or her] respective littoral rights with due regard for the corresponding rights of the other. . . . The fundamental riparian right[5] on which all others depend is

---

[5] "The term [riparian] is sometimes used as relating to the shore of the sea or other tidal water, or of a lake or other considerable body of water not having the characteristics of a watercourse. But this is not accurate. The proper word to be employed in such connections is 'littoral.' " Black's Law Dictionary (6th Ed. 1990).

the right of access. . . . This is the most important consideration in any division of the respective rights of the parties to land under water." (Citations omitted.) *Rochester* v. *Barney,* supra, 469.

The parties agree that the relevant standard for determining disputed littoral boundary lines of abutting shorefront property was set forth in *Rochester* v. *Barney,* supra, 117 Conn. 469–70, in which we stated: "Where the general course of the shore is a straight line, the division of riparian rights between adjoining landowners is along a perpendicular to the straight line from the intersection of the upland boundary line between the parties with the high-water mark. *Rowe* v. *Smith,* 48 Conn. 444, 448 [1880]; *New Haven Steamboat Co.* v. *Sargent & Co.,* 50 Conn. 199, 208 [1882]; *Armstrong* v. *Wheeler,* 52 Conn. 428, 432 [1885]. Where the general course of the shore is a curved convex line, the division is along the line of the radius of the curve extended from the intersection of the upland boundary line between the parties with the high-water mark. *Morris* v. *Beardsley,* 54 Conn. 338, 341, 8 Atl. 139 [1887]; *Lane* v. *Smith Brothers,* 80 Conn. 185, 188, 67 Atl. 558 [1907]. Where the general course of the shore is a broad concave curve, the division is along a perpendicular from the intersection of the upland boundary line between the parties with the high-water mark to a base line drawn across the mouth of the curve. *Lowndes* v. *Wick,* 69 Conn. 15, 30, 36 Atl. 1072 [1897]; *Moran* v. *Denison,* 79 Conn. 325, 65 Atl. 291 [1906]." In determining the shape of the shoreline, structures may be considered part of the shoreline if they are "definite and substantial in their character [and] possess the appearance of stability and permanence . . . ." *Moran* v. *Denison,* supra, 331. When applied to an irregular shore, the aim of the rules is to " 'give each [upland owner] . . . a fair and reasonable opportunity of access to the channel.' " *Rochester* v. *Barney,* supra, 469, quoting *Lowndes* v. *Wick,* supra, 29.

To support its argument that the parties' properties are located on a straight shoreline, the defendant relied primarily on the testimony of its expert, Robert I. Reis. On direct examination by the defendant, Reis testified that "the base line for Stonington Harbor is what is designated on this map as the 1827 straight shoreline which is parallel to Water Street . . . there is no reason to take a line beginning at the tip of the Town Dock and extend it to the base of the breakwater. It is inconsistent with all of the waterfront development that is shown on this map."

On cross-examination, the plaintiff questioned Reis concerning inconsistent testimony he had offered as an expert witness in the case of *Harboredge Development Corp.* v. *Renehan,* Superior Court, judicial district of New London, Docket No. 073363 (February 26, 1985). That case involved a littoral boundary line dispute between two abutting property owners whose land was also located in Stonington Harbor directly south of the Town Dock. For the purposes of separating the littoral rights appurtenant to the properties at issue in that case, Reis had testified that the shoreline between the westerly end of the Town Dock and the base of the breakwater in the harbor formed a concave cove.[6] When asked to explain the inconsistencies between his testimony in the two cases, Reis explained that before the Town Dock was constructed, the shoreline was basically a straight line and access to the harbor could best be achieved by upland owners continuing their boundary lines at right angles to Water Street. Reis acknowledged, however, that the existence of the Town Dock, which had been constructed more than 100 years ago created a situation in which some property owners would no longer be able to achieve access to

---

[6] The parties have stipulated that the shape of the coastline between the Town Dock and the base of the breakwater has not changed in any relevant manner since the time of Reis' testimony in 1985.

the channel by continuing their littoral lines at right angles to Water Street.

The shape of the relevant portion of the shoreline is a matter of fact to be determined by the trial court, whose findings will not be disturbed unless clearly erroneous. *Rochester* v. *Barney*, supra, 117 Conn. 471. " 'A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings.' " (Citations omitted.) *Dalia* v. *Lawrence*, 226 Conn. 51, 71, 627 A.2d 392 (1993), quoting *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991); *State Medical Society* v. *Commission on Hospitals & Health Care*, 223 Conn. 450, 458, 612 A.2d 1217 (1992).

Reis' testimony that the shoreline of the harbor was straight was seriously undermined by his prior inconsistent testimony in the *Harboredge Development Corp.* case. Moreover, in determining the shape of the shoreline, the trial court examined numerous aerial photographs and maps that had been introduced into evidence. Further, the trial court had before it the parties' stipulation that the Town Dock had been in existence in approximately its present configuration, extending westerly into the harbor, for more than 100 years. See *Moran* v. *Denison*, supra, 79 Conn. 330–31 (littoral rights determined by conditions that are definite and substantial in character and possess appearance of stability and permanence). When the question involves an issue that is within the ordinary knowledge and experience of judges and jurors, the trial court's decision does not need to be supported by expert tes-

timony. *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.,* 218 Conn. 297, 301, 589 A.2d 337 (1991); *Puro* v. *Henry,* 188 Conn. 301, 309, 449 A.2d 176 (1982); *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428, 429 A.2d 910 (1980). The trial court needed no particular expertise to examine maps and aerial photographs to make a determination regarding the shape of the shoreline. After a careful review of the relevant evidence, we conclude that the trial court reasonably could have determined that the parties' shoreline was part of a concave cove extending from the base of the breakwater to the tip of the Town Dock.

II

The defendant next claims that the trial court improperly relied on the decision of the trial court in *Harboredge Development Corp.* v. *Renehan,* supra, Docket No. 073363, to determine the shape of the shoreline. This claim is without merit.

The trial court, in this case, stated that "[t]he court finds that the properties in the present case are in the same general concave cove as the properties in the *Harboredge* case . . . ." Although this language clearly indicates that the trial court arrived at the same conclusion as the court in *Harboredge Development Corp.,* there is nothing to indicate that the court felt bound to arrive at this conclusion as a matter of collateral estoppel or res judicata. Indeed, throughout the trial, the court stated that it was not bound by the decision in *Harboredge Development Corp.* Moreover, to the extent that the trial court's memorandum of decision may be viewed as ambiguous in this respect, we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment. *Matza* v. *Matza,* 226 Conn. 166, 188, 627 A.2d 414 (1993); *Walton* v. *New Hartford,* 223 Conn. 155, 165, 612 A.2d 1153 (1992). Because the defend-

ant filed no such motion, we must assume the court acted properly. *Matza* v. *Matza,* supra, 188; *Walton* v. *New Hartford,* supra, 165.

### III

The defendant also claims that the trial court's determination of the littoral boundary was improper because that determination failed to achieve an equitable distribution of littoral rights between the parties consistent with past development of the harbor. We are unpersuaded.

Although the extension of littoral boundary lines toward the channel perpendicular to a base line drawn across the mouth of a concave cove is a well established method for arriving at an equitable division of littoral rights consistent with the contour of the shore, "no rule can be laid down which is applicable to every situation, since much must depend in every instance upon the shape of the upland, the arm of the sea and their relative position to each other. *Simons* v. *French,* 25 Conn. 346, 354 [1856]." *Rochester* v. *Barney,* supra, 117 Conn. 470. In apportioning littoral rights along an irregular or concave shore, the basic aim is to preserve the essential rights of both parties to wharf out and to achieve reasonable access to the channel. Id., 469; *Lowndes* v. *Wicks,* supra, 69 Conn. 29. Thus, in *Rochester* v. *Barney,* supra, 470, although the trial court properly found that the shape of the relevant shoreline was a concave curve and determined the littoral boundary through application of the appropriate rule, we reversed its judgment because the boundary line established by the trial court completely deprived one of the parties of access to deep water from part of their shoreline and thereby failed, as a matter of law, to accomplish an "equitable and proper division" of the rights between the parties.

The defendant does not claim that the trial court's decision in this case prevents it from achieving access to the channel from any part of its shoreline. We recognize that, as indicated by the map, the breakwater, which projects into the defendant's littoral area, does impose a barrier that limits the defendant's ability to exercise its littoral rights. Moreover, all of the development that has taken place along the southern part of the harbor, including the plaintiff's dock, has extended into the harbor in a more or less straight westerly direction at a right angle to Water Street. The defendant points out that due to this pattern of development, if hypothetical littoral boundaries consistent with a concave shoreline were imposed across the entire harbor, many currently existing docks, including the plaintiffs' dock, would encroach on the littoral areas of others.[7] Although, on the basis of these considerations, the trial court might reasonably have exercised its discretion to modify the line to create a distribution of the littoral area that would be more consistent with past development, it determined, after considering past development, not to do so.

It is the province of the trial court to "determine the line which will best answer the requirements of the situation, in view of all the facts." *Rochester* v. *Barney,* supra, 117 Conn. 471. The standard of review, therefore, is not whether we agree with the ultimate result, but whether the trial court, in arriving at its conclusion, acted reasonably. *Eichmann* v. *J & J Building Co.,* 216 Conn. 443, 455, 582 A.2d 182 (1990); *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 312, 521 A.2d 1017 (1987). " 'We do not examine the rec-

---

[7] We emphasize that the only boundary that the court determined was that between the littoral areas of the defendant and the plaintiff. Other littoral rights along the harbor must be determined in light of the specific factual and equitable circumstances surrounding the respective properties if and when actual controversies arise.

ord to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' [*Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)]." *Lukas* v. *New Haven,* 184 Conn. 205, 208, 439 A.2d 949 (1981). Applying this standard, we cannot conclude that the trial court's determination of the boundary line, as a matter of law, creates a distribution that is so inconsistent with past development and so inequitable that it denies the defendant its essential rights to wharf out and to obtain access to deep water.

## IV

The defendant also claims that the trial court failed to consider whether the littoral area accorded to the defendant was sufficiently proportional to its shoreline. We disagree. Although the trial court's memorandum of decision contains no express statement that the court considered whether the division of littoral rights was sufficiently proportional when determining the littoral boundary line, the court did make specific findings as to the length of the parties' westerly facing shorelines and, quoting *Rochester* v. *Barney,* supra, 117 Conn. 469, set forth the appropriate standard to be applied: " 'In apportioning these [littoral] rights, the object to be kept in view is . . . to secure to each rights appropriate to, and over an area proportioned in extent to, his shore lines.' " The trial court also noted that due to the breakwater, the littoral area of the defendant was "substantially narrowed." We must assume that the court, in arriving at its conclusion, considered the evidence, was aware of its import, and properly applied the standard it had articulated. See *Matza* v. *Matza,* supra, 226 Conn. 187–88; *Walton* v. *New Hartford,* supra, 223 Conn. 164–65. As noted earlier,

if the defendant felt such an assumption to be unwarranted, it could have asked the trial court to articulate its reasoning. Practice Book § 4051.

The judgment is affirmed.

In this opinion, PETERS, C. J., and BORDEN and PALMER, Js., concurred.

BERDON, J., dissenting. I assume for the purposes of this dissent that the shoreline is concave, as found by the trial court, even though it appears to me that the shoreline is straight[1] and the only expert who testified at trial stated that it was straight. Even if it is assumed that the shoreline is concave, I believe that the trial court acted improperly in basing its decision upon the rules established in *Rochester* v. *Barney*, 117 Conn. 462, 169 A. 45 (1933), for littoral rights appurtenant to concave shorelines without taking into account the equitable considerations established in that case.

As the majority points out, *Rochester* makes clear that "no rule can be laid down which is applicable to every situation, since much must depend in every instance upon the shape of the upland, the arm of the sea and their relative position to each other." Id., 470. The court in *Rochester* held that the mechanical rules it set forth for straight, concave and convex shorelines may require *equitable* adjustment so that each riparian proprietor will have (1) " 'a fair and reasonable opportunity of access to the channel,' " *and* (2) littoral rights over an area proportionate to its shoreline. Id., 469. The trial court found that the plaintiff has only ninety lineal feet of westerly facing shoreline whereas the defendant has 530 feet, almost six times more.[2] In

---

[1] See map attached to majority opinion.

[2] Footnote 4 of the majority opinion is misleading. The northerly and southerly frontages referred to in this footnote measure the extent to which

regard to the first equitable consideration, the trial court admitted that the boundary line suggested by the rules would substantially narrow the defendant's access to the channel. Indeed, the boundary line provides the plaintiff with about five times more access to the channel than the defendant.[3] Such a result is simply not equitable. In regard to the second equitable consideration, the boundary line established by the trial court gives the defendant, according to my estimate, roughly only 55 percent of the littoral rights available between the plaintiff's dock and the breakwater. It therefore provides the plaintiff with littoral rights vastly disproportionate to its share of the shoreline. This, too, is inequitable.[4]

In my view, it is inappropriate to defer to the discretion of the trial court in this case. The memorandum of decision clearly indicates that in regard to the first equitable consideration, the trial court employed the wrong standard: the court considered whether the defendant's access to the channel was adequate, whereas it should have considered whether it was equitable. Moreover, the court did not even give a thought to the second equitable consideration, which is whether

---

the plaintiff's land juts out into the water. The lineal frontages relied on by the trial court and discussed in this dissent measure the parties' true shares of the shoreline, without reference to the extent to which the land juts out. If the defendant's entire frontage were measured, it would be much greater than 530 feet. Obviously, the trial court considered the plaintiff's northerly and southerly frontages to be irrelevant, because the court did not even mention them in its memorandum of decision. These frontages are irrelevant to the issues before us, and the majority does not claim otherwise.

[3] This determination is based on the division of rights between the end of the plaintiff's dock and the end of the breakwater.

[4] The trial court recognized that the breakwater imposed a barrier that limited the defendant's ability to exercise its littoral rights. I note that if the trial court had considered the breakwater to be land (as it considered the Town Dock), and extended the chord of the arc to the tip of the breakwater, rather than its base, then a far more equitable distribution would have been achieved, even under the rules for concave shorelines.

the boundary line created a division of littoral rights that was proportionate to the parties' respective shares of the relevant shoreline. Accordingly, I would reverse the judgment of the trial court and remand this matter for a new trial.

I respectfully dissent.