[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Facts:
This is an action for a declaratory judgment to determine the following:
(a) The proper location of the boundary lines of the land of the plaintiff and of the defendant at the point or points where they meet.
(b) The areas located in the Housatonic River adjacent to the land of the plaintiff and of the defendant which are subject to the littoral rights of the respective land owners.
(c) Whether or not the existing and/or any proposed bulkheads and piles constructed or to be constructed by the defendant would violate the littoral rights appurtenant to the land of the plaintiff and/or defendant.
The plaintiffs Robert DelBuono and Irene DelBuono, as Trustees of the Robert DelBuono Revocable Trust, are the owners of land in Stratford, Connecticut, located on the westerly shore of the Housatonic River. The property is described in a deed placed in evidence as plaintiffs' Exhibit A.
The defendant, Brown Boat Works, Inc., is the owner of land in Stratford, Connecticut, located southerly of the plaintiffs' property, also on the westerly shore of the Housatonic River. The defendant's property is described in a deed placed in evidence as plaintiffs' Exhibit B. . . . CT Page 1358
Discussion:
A declaratory judgment action is a proper vehicle for the determination of the extent of adjoining property owners' littoral rights in a navigable body of water and for fixing the location of the littoral boundary line between their properties.Armstrong v. Wheeler, 52 Conn. 428.
There appeared to be no serious dispute between the parties as to the location of the upland boundary line between the properties of the plaintiff and the defendant. . . . The court therefore finds the property line to be as set forth on Exhibit C.
There exists a substantial issue in dispute between plaintiffs and defendant regarding the littoral boundary line between their properties and the allocation of littoral rights in the Housatonic River.
The landmark case in Connecticut describing littoral rights and discussing the various methods of determining littoral boundaries is Rochester v. Barney, 117 Conn. 462 (1933). There, the Connecticut Supreme Court said, at pages 468-469:
 ". . . In Connecticut, the public, whose representative is the State, is the owner of the soil between high and low-water mark upon navigable water where the tide ebbs and flows. The owner of the adjoining upland has certain exclusive yet qualified rights and privileges in the waters and submerged land adjoining his upland. He has the exclusive privilege of wharfing out and erecting piers over and upon such soil and of using it for any purpose which does not interfere with navigation, and he may convey these privileges separately from the adjoining land. He also has the right of accretion, and generally of reclaimation, and the right of access by water to and from his upland . . . . (citations omitted). However, where a party's upland bordering on navigable waters adjoins and abuts the property of another, each must exercise his respective littoral rights with due regard for the corresponding rights of the other (citation omitted). The right of access is distinct from that which each has as a member of the public . . . . (citations omitted). The fundamental riparian right on which all others depend is the right of CT Page 1359 access. This is the most important consideration in any division of the respective rights of the parties to land under water.
The defendant introduced into evidence [a map] . . . There was no evidence that the filing of the map created an agreement regarding the littoral boundaries of the plaintiff's and defendant's properties.
 The terms littoral and riparian are often used interchangeably. "The term [riparian] is sometimes used as relating to the shore of the sea or other tidal water, or of a lake or other considerable body of water not having the characteristics of a watercourse. But this is not accurate. The proper word to be employed in such connections is `littoral'" Black's Law Dictionary (6th Ed. 1990) Water Street Associates Limited Partnership v. Innepak Plastics Corporation, 230 Conn. 764, 769, 646 A.2d 790, 794 (1994).
Various permits from governmental agencies were introduced, authorizing bulkheads, floats, piers, ramps, etc. However, no evidence was introduced to clearly show that any governmental agency had established an upland boundary or a littoral boundary between the plaintiff and defendant. . . .
Robert DelBuono provided credible testimony of a conversation he had with Andrew Brown, the defendants predecessor in title, shortly after he noticed the location of the pilings in front of what he considered to be his property. Robert DelBuono testified that he told Andrew Brown that although he felt the piles were on his property they could remain in place. DelBuono testified that he permitted the piles to remain as he felt both properties would likely be developed jointly in the future.
In determining littoral boundaries, the court must consider certain factors, including "the location of the shoreline, the location and limits of location of upland ownership as it touches on the shoreline, and the location of the channel or deep water."Moran v. Denison, 79 Conn. 325, 331 (1906). The shape of the shoreline must be determined based on conditions of the shoreline as may exist at the time of the determination which are definite and substantial in their character and possess the appearance of stability and permanence. Id. at 330-31.
In Rochester v. Barney, supra at 469-70, the Supreme Court CT Page 1360 stated:
 "For the purpose of reaching an equitable division in many cases a satisfactory result has been obtained by running a perpendicular from the intersection of the upland boundary line with the high-water mark to a theoretical base line. Where the general course of the shore is a straight line, the division of riparian rights between adjoining landowners is along a perpendicular to the straight line from the intersection of the upland boundary line between the parties with the high-water mark. Where the general course of the shore is a curved convex line, the division is along the line of the radius of the curve extended from the intersection of the upland boundary line between the parties with the high water mark. Where the general course of the shore is a broad concave curve, the division is along a perpendicular from the intersection of the upland boundary line between the parties with the high-water mark to a base line drawn across the mouth of the curve. (Citations omitted.)
During the trial of the case, various methods of determining a littoral boundary were introduced. Although the parties respective experts differed as to which "cove" should be used, they both agreed that the relevant shoreline is a cove and therefore the cove method for determining the littoral lines in this case is the appropriate method under the Connecticut Rules.
The court must determine the two points which form the "headlands" of the cove. . . .
In apportioning these riparian rights, the object to be kept in view is to extend the lateral lines of adjoining owners of upland as to secure to each rights appropriate to, and over an area proportioned in extent to, his shoreline. Also, the aim of all rules "as applied to the rights of adjoining riparian proprietors on an irregular shore [is] to give to each as far as may be, a fair and reasonable opportunity of access to the channel". Rochester v. Barney, 117 Conn. 462, 469.
For the reasons stated, the court hereby determines that the cove method, as set forth on Plaintiffs' Exhibit E, establishes a fair and equitable littoral boundary line between the properties of the plaintiff and defendant. . . . Each riparian proprietor will thus have littoral rights over an area proportionate to its shoreline. CT Page 1361
A permanent injunction is issued, staying and restraining the defendant, its agents, employees, invitees, lessees and successors and assigns from the construction, use or maintenance of pilings, bulkheads, piers or docks which encroach upon or violate in any manner the littoral rights of the plaintiff, as established by this decision.
Tobin, J.