### ABINGTON LIMITED PARTNERSHIP *v.*
### BRUCE G. HEUBLEIN ET AL.
### (SC 16171)

McDonald, C. J., and Katz, Palmer, McWeeny and Beach, Js.*

Argued May 26, 2000—officially released August 14, 2001

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

*Jeffrey J. Mirman*, with whom were *Wesley W. Horton*, and, on the brief, *Lisa A. Zaccardelli* and *Kimberly A. Knox*, for the appellant-appellee (plaintiff).

*Thomas J. Rechen*, with whom were *Richard F. Wareing*, *Dennis F. Kerrigan*, *Jr.*, *Brian J. Comerford*, assistant attorney general, *Kent D. Mawhinney*, and, on the brief, *James A. Budinetz*, *Richard Blumenthal*, attorney general, *Linda Morkan*, *James Reardon*, *Mark*

W. *Dietz,* David A. *Baram,* and Paul *Litman,* for the appellees-appellants (defendant Talcott Mountain Science Center for Student Involvement, Inc., et al.).

*Opinion*

PALMER, J. This case involves a dispute between two abutting property owners, namely, the plaintiff, Abington Limited Partnership,[1] and the defendant, Talcott Mountain Science Center for Student Involvement, Inc. (Science Center),[2] regarding the Science Center's use of an easement of access[3] that it possesses over a private roadway located on the plaintiff's property. The parties agree that the Science Center acquired an easement over the plaintiff's roadway in 1975, when the Science Center purchased a certain piece of property abutting the property now owned by the plaintiff. The parties disagree, however, as to whether the Science Center also may use the roadway to reach a second piece of property that the Science Center purchased in 1980, which is adjacent to the property that it acquired in 1975. After a court trial, the court rejected the plaintiff's claim that the Science Center is barred from using the roadway to gain access to the property that it purchased in 1980 and, consequently, rendered judgment

[1] Abington Limited Partnership is owned and controlled by Michael Konover.

[2] There are several additional defendants in this case: Metro Mobile CTS of Hartford, Inc., Chase Family Interests No. 7, LLC; Hartford Television, Inc., the state of Connecticut, Tolland Bank and CBS Radio, Inc. For purposes of this appeal, the claims asserted against those parties do not differ materially from those asserted against the Science Center, which is the primary defendant. The named defendant, Bruce G. Heublein, is no longer a party to this action.

[3] "[T]he term easement of access is used to refer to an abutting landowner's right of ingress, egress, and regress . . . ." (Internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.,* 250 Conn. 135, 142, 735 A.2d 798 (1999).

for the Science Center, among other defendants.[4] We affirm the judgment of the trial court.[5]

The following facts are set forth in the comprehensive and thoughtful opinion of the trial court.[6] The plaintiff owns a ninety-six acre piece of property on Talcott Mountain, located on the border between the towns of Avon and Bloomfield. The plaintiff's property contains a private roadway known as Montevideo Road.[7] The Science Center, which also is located on Talcott Mountain, is a nonprofit, educational institution that was established in 1965. It operates a science academy for grades four through eight and, in addition, creates and broadcasts educational programs, conducts programs for students from several public high schools, and offers weekend and summer programs for children.[8] The Science Center holds an easement over Montevideo Road, which provides the only means of public access to the Science Center. Because the Science Center's use of that easement gives rise to the dispute underlying this case, it is necessary to explain briefly how that easement originated.

The real property owned by the Science Center consists of two parcels of land that the Science Center

---

[4] See footnote 2 of this opinion.

[5] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] We note, preliminarily, that we previously have decided an appeal arising out of an earlier trial of this case. *Abington Ltd. Partnership* v. *Heublein,* 246 Conn. 815, 717 A.2d 1232 (1998) (*Heublein*). In *Heublein,* we reversed the judgment of the trial court rendered in favor of the Science Center and other defendants and remanded the case for a new trial; id., 833; based on the trial judge's improper ex parte visit to the property that is the subject of the parties' dispute and improper ex parte conversation regarding the dispute with the owner of a nearby dwelling , both of which occurred during the pendency of the trial. Id., 826. This appeal arises out of the trial on remand, which was conducted by a different judge.

[7] Montevideo Road is located in the towns of Avon and Bloomfield.

[8] The Science Center also operates a communications tower on which some of the defendants lease space.

acquired from different grantors at different times. Prior to 1955, the first or original parcel, which is comprised of 6.34 acres, was owned by The Hartford Times, Inc. In 1955, the United States government acquired that parcel from The Hartford Times, Inc.,[9] pursuant to a declaration of taking filed in federal court pursuant to 40 U.S.C. § 257.[10] The United States government condemned this property, which is known as the federal parcel, for use as a radar tracking installation in connection with its Nike missile program.[11] The United States government also acquired several access easements, including an easement over Montevideo Road,[12] which, at that time, was owned by Katherine Vidal Smith, a predecessor in title to the plaintiff.[13] The declaration of

[9] The 6.34 acre parcel is part of a larger tract of land that the United States acquired from The Hartford Times, Inc.

[10] Title 40 of the United States Code, § 257, provides: "In every case in which the Secretary of the Treasury or any other officer of the Government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses, he may acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the Government to do so, and the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this section and section 258 of this title, or such other officer, shall cause proceedings to be commenced for condemnation within thirty days from receipt of the application at the Department of Justice." 40 U.S.C. § 257 (1952).

[11] In its declaration of taking, the United States, by and through the Secretary of the Army, represented: "The public uses for which said land is taken are as follows: The said land is necessary adequately to provide for additional facilities for the United States Army and other military uses incident thereto. The said land has been selected . . . for acquisition by the United States for use in connection with anti-aircraft positions in the [t]owns of Avon, Bloomfield and Simsbury, Hartford County, Connecticut, and for such other uses as may be authorized by Congress or by Executive Order." The complaint that the United States government filed in connection with the declaration of taking stated that "[t]he use for which the property is to be taken is for military purposes."

[12] In fact, the United States government acquired two contiguous easements over Montevideo Road. For ease of reference, we refer to the easements in the singular.

[13] In its memorandum of decision, the trial court stated that "[t]he record of the [federal taking] proceeding indicates that the [United States] government

taking indicated that the Montevideo Road easement was "perpetual and assignable . . . ."[14]

In connection with its acquisition of the federal parcel, the United States government also leased from The Hartford Times, Inc., certain property adjacent to the federal parcel. The United States government leased this property, which is known as the masking area, to preclude any development on that property that might be incompatible with the United States government's use of the federal parcel as a radar tracking site and to preserve a clear line of sight between the radar equipment to be installed on the federal parcel and the missile

deposited $1000 as compensation to [Smith] for the easements . . . but that, later, in April. 1959, the government moved for an order adjudging just compensation to be $3000 and ordering payment of that amount to [Smith] in care of her attorney . . . . The motion refers to an agreement between the government and [Smith] in which she accepts $3000 as just compensation for the easements over her property acquired by the government. . . .

"The record of the federal taking proceeding includes no motions or other papers filed in federal court on behalf of [Smith]. The fact that [the] government filed the motion to increase the compensation based on an agreement with [Smith] and the mention of [her attorney] leads this court to infer that [Smith] negotiated for and obtained additional compensation for the [easement], and that the adjustment was achieved without the need for a contested hearing over fair compensation." (Citations omitted; internal quotation marks omitted.)

[14] The declaration of taking provides in relevant part: "The estates taken for said public uses are . . . [a] perpetual and assignable easement and right of way for the location, construction, operation, maintenance, patrol, replacement and/or removal of an access road, overhead pole and underground electric power and telephone lines, with all necessary fittings and appliances thereto, in, upon, under, over and across the . . . designated [tracts of land] together with the right to trim, cut, fell and remove therefrom all trees, underbrush and obstructions, and any other vegetation, structures, or obstacles within the limits of the right of way . . . reserving, however, to the landowners, their heirs, successors and assigns and to all persons legally entitled to the use of the existing road on [the designated tracts of land], the right to pass and repass over said road in such a manner as shall not interfere with the use thereof by the United States and reserving to the landowners their heirs, successors and assigns, all such uses, rights and privileges as may be exercised and enjoyed without interferences with or abridgment of the easement hereby acquired by the United States."

facility to be located in the valley below. Under its lease of the masking area, which comprised approximately 4.8 acres, the United States government was authorized to attach fixtures, erect structures, trim and remove trees, and raze any buildings or structures on the property.

When the Nike missile program was discontinued, the federal parcel, along with the access easement over Montevideo Road, became subject to the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 471 et seq., which provided for, inter alia, the disposal of "surplus real property, including buildings, fixtures, and equipment situated thereon . . . needed for school, classroom, or other educational use . . . ." 40 U.S.C. § 484 (k) (1) (1964). In 1967, the United States, acting at the request of the board of education of the town of Avon, and pursuant to 40 U.S.C. § 484 (k), conveyed the federal parcel to the town of Avon. In 1970, the town of Avon leased the federal parcel to the Science Center, which then commenced its activities and programs. In June, 1975, the town of Avon conveyed the federal parcel to the Science Center, which currently uses that property for certain of its operations. It is undisputed that the Science Center holds an easement over Montevideo Road that allows the Science Center and its patrons and employees access to the *federal* parcel.

Initially, the Science Center held classes and other educational programs in renovated and expanded Nike site buildings located on the federal parcel. In 1980, the Science Center acquired a 13.8 acre parcel of land from the state of Connecticut, known as the state parcel, which abuts the federal parcel.[15] In 1991, the Science Center completed construction of a 20,000 square foot

---

[15] The state parcel, which includes a portion of the masking area, partially surrounds the federal parcel on its north, west and south boundaries.

building on the state parcel.[16] Since the completion of that building, which houses administrative offices, classrooms, television studios and a planetarium, the Science Center has used both the federal parcel and the state parcel to conduct its programs. Finally, the Science Center uses the Montevideo Road easement to gain access to both the federal and state parcels.

The plaintiff filed an amended complaint containing four counts: action to settle title, trespass, misuse of easement and overburdening of easement.[17] The essence of each of these claims is that the Science Center holds an easement appurtenant[18] over Montevideo Road that benefits the federal parcel, but not the after-acquired state parcel, and, consequently, the Science Center is not entitled to use the roadway to access the state parcel. The Science Center disputed the plaintiff's contention that its use of Montevideo Road is so limited. Specifically, the Science Center maintained that, under controlling principles of federal common law, its easement over Montevideo Road is an independent property right that exists separate and apart from any particular piece of property. The Science Center claimed, alternatively, that, even if the use of the ease-

---

[16] The building is located in part on what formerly was the masking area.

[17] The plaintiff also alleged that Smith, the plaintiff's predecessor in title, was liable for breach of warranty against encumbrances contained in the warranty deed and for breach of contract under the sales agreement. The plaintiff, however, withdrew those claims prior to trial.

[18] "Easements are classified as either easements appurtenant or easements in gross. . . . Two distinct estates are involved in an easement appurtenant: the dominant to which the easement belongs and the servient upon which the obligation rests. . . . An easement appurtenant must be of benefit to the dominant estate but the servient estate need not be adjacent to the dominant estate. . . . An easement in gross is one which does not benefit the possessor of any tract of land in his use of it as such possessor. . . . An easement in gross belongs to the owner of it independently of his ownership or possession of any specific land. Therefore, in contrast to an easement appurtenant, its ownership may be described as being personal to the owner of it." (Citations omitted; internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 512, 757 A.2d 1103 (2000).

ment is governed by principles of state common law, that easement, though appurtenant to the federal parcel, also extends to the after-acquired state parcel.

After a trial to the court, the court, applying principles of federal common law,[19] concluded that the Science Center possesses an easement over Montevideo Road that extends to the state parcel as well as to the federal parcel. In particular, the trial court concluded that the easement that the United States government acquired from Smith in 1955 constituted an independent property right pursuant to which the United States government was authorized to use Montevideo Road to obtain access not only to the federal parcel, but also to the masking area and to any other land that the United States government might have sought to reach in furtherance of its military operations. The trial court further concluded that the easement that the Science Center had acquired as successor in interest to the United States government also existed independent of any particular parcel of property. Finally, the court determined that, even if state common law, rather than federal common law, governs the parties' dispute, the Science Center's use of Montevideo Road to gain access to the state parcel is permissible in light of the reasonable expectations of the parties when the easement appurtenant was created and the fact that such use will not overburden the easement.

---

[19] The trial court determined that federal common law governs because the easement was created by the United States government pursuant to the exercise of its eminent domain power. See, e.g., *United States* v. *93.970 Acres of Land*, 360 U.S. 328, 332–33, 79 S. Ct. 1193, 3 L. Ed. 2d 1275 (1959) (condemnation of land for Nike missile site involves essential government interests and "where [such] interests of the Federal Government are concerned, federal law rules unless Congress chooses to make state laws applicable"); see also *Higginson* v. *United States*, 384 F.2d 504, 506 (6th Cir. 1967); *State Box Co.* v. *United States*, 321 F.2d 640, 641 (9th Cir. 1963); *United States* v. *Certain Interests in Property in Champaign County*, 271 F.2d 379, 384 (7th Cir. 1959).

On appeal, the plaintiff contends that the trial court improperly applied federal common law to this case. In particular, the plaintiff contends that there is nothing in the record to support the conclusion that the disputed easement is anything but an easement appurtenant and that "[f]ederal law concerning easements appurtenant does not differ from Connecticut law." The plaintiff further claims that the trial court improperly applied our state common law of easements to the facts of this case in concluding that the Science Center is entitled to use Montevideo Road to reach the state parcel.

We need not decide whether the trial court properly determined that this case is governed by federal common law because, even if we assume, arguendo, that the plaintiff is correct that no separate and distinct body of federal common law controls the resolution of the parties' dispute, we conclude that the plaintiff has not established that it is entitled to prevail[20] under established state common-law principles.[21]

As we have indicated; see footnote 6 of this opinion; we previously have had occasion to address this case on appeal after trial. See generally *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 717 A.2d 1232 (1998) (*Heublein*). In *Heublein*, we reversed the trial court's judgment rendered in favor of the Science Center, among other defendants, on grounds unrelated to the merits of the case. See generally id., 818–26, 833. We nevertheless provided guidance to the parties regarding an issue of law that was likely to recur upon

[20] We, therefore, intimate no view regarding the applicability of federal common law to this case.

[21] At trial, the Science Center claimed, alternatively, that it was entitled to use Montevideo Road to reach the state parcel because it holds an easement by reservation, by implication or by necessity. The trial court rejected these claims. The Science Center cross appealed on the basis of the trial court's rejection of the Science Center's alternative claims. Because we affirm the trial court's judgment rendered in favor of the Science Center, we do not consider the Science Center's cross appeal.

retrial and about which the parties had "taken diametrically opposed positions"; id., 827; namely, "the circumstances, if any, in which the benefit of an easement can accrue to property that was acquired by the holder of the easement after the creation of the easement." Id. Relying on certain facts that we assumed were undisputed, we addressed three issues "raised by the Science Center's alleged right to access Montevideo Road for the benefit of those of its activities that are located on the [state parcel]."[22] Id., 828. Specifically, we considered: "(1) whether after-acquired property is excluded, as a matter of law, from the right of access previously obtained by an easement appurtenant; (2) in the absence of a per se exclusion, what is the test for determining the extent of the easement; and (3) in applying the proper test, what factual showing is required to determine whether an extended easement overburdens the servitude created by the original easement." Id.

We then proceeded to reaffirm the principles that we previously had enunciated in *Carbone* v. *Vigliotti*, 222 Conn. 216, 610 A.2d 565 (1992), in which we concluded that "the mere addition of other land to the dominant estate does not [necessarily] constitute an overburden or misuse of the easement."[23] Id., 225. In explaining the

---

[22] In *Heublein*, we assumed, inter alia, that it was undisputed "that the masking area encompasses all of the after-acquired property that the Science Center seeks to access by use of Montevideo Road." *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 828 n.18. In fact, the after-acquired property, that is, the state parcel, is comprised of land that falls both within and without the masking area. This minor factual discrepancy, however, in no way affects the validity of our treatment, in *Heublein*, of the issues raised by the Science Center's claimed right to access the state parcel via Montevideo Road.

[23] "In *Carbone*, this court upheld the right of an easement holder who built a house on property that straddled the line between the property that he had owned previously and property that he acquired subsequently." *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 829, citing *Carbone* v. *Vigliotti*, supra, 222 Conn. 225. As we noted in *Heublein*, the Science Center, in responding to the plaintiff's claims on appeal after the first trial, had maintained "not only that *Carbone* was decided properly, but also

holding of *Carbone* in *Heublein,* we reiterated that, although an easement of access will not be presumed to attach automatically to after-acquired property, "in some circumstances, the parties at the time of the creation of an easement may be found to have contemplated, as a matter of law, that its benefits might accrue to adjacent property that was not formally within the terms of the easement." *Abington Ltd. Partnership* v *Heublein,* supra, 246 Conn. 829–30. We furth... explained: "The nub of our holding [in *Carbone*] was to reject a bright-line rule that permitting adjacent after-acquired property to benefit from an easement of access automatically constitutes an overburden or misuse of the easement. . . . We adopted instead the principle that the construction of an easement requires inquiry into the intent of the parties when the easement was created. . . . To determine that intent, we held, a court reasonably may take into account the proposed use and the likely development of the dominant estate." (Citations omitted.) Id., 830. We cautioned, however, that, "[u]nder no circumstances . . . could an easement be construed to encompass after acquired property if the result would be a material increase in the use of the servient property."[24] Id. We thereafter stated that, upon retrial, "the governing principles stated in *Carbone* should be applied."[25] Id., 832.

---

that it reflects the present day understanding of the law of easements and servitudes contained in the Restatement (Third) of Property, Servitudes"; *Abington Ltd. Partnership* v. *Heublein,* supra, 829; whereas the plaintiff had urged us "to reconsider the validity of that holding . . . or, at least, to limit *Carbone* to its facts." (Citation omitted.) Id. We agreed with the Science Center. See generally id., 830–32.

[24] In *Heublein,* we noted that "[o]ur reaffirmation of *Carbone* finds support in the recently approved provisions of the Restatement (Third) of Property, Servitudes"; *Abington Ltd. Partnership* v. *Heublein,* supra, 246 Conn. 830; which "makes the intentions or the reasonable expectations of the parties the overarching consideration in the construction of a servitude." Id, 831; see also *Il Giardino, LLC* v. *Belle Haven Land Co.,* 254 Conn. 502, 513–14, 757 A.2d 1103 (2000).

[25] We indicated, however, that the principles announced in *Carbone* might not be applicable upon retrial if the factual assumptions that we had made

Upon application of these principles, the trial court concluded that, when the easement at issue was created, the parties reasonably expected that the United States government might use the easement to access property contiguous to the dominant estate (the federal parcel). The trial court also found that the Science Center's use of the easement to access the state parcel does not constitute an overburdening of the easement. These conclusions are amply supported by the evidence.

With respect to the intent or reasonable expectations of the parties when the easement was created, the documents pertaining to the condemnation of the federal parcel indicate that the United States government acquired that property for military purposes and, in particular, for use as a radar tracking facility. In light of the highly sensitive nature of the use to which the property was to be put, it is reasonable to conclude, as the trial court did, that military personnel securing the facility would have been free "to venture beyond the perimeter [of the federal parcel] to meet and turn away any trespassers who approached . . . the military installation." Any such personnel would have been required to use the easement over Montevideo Road to gain access to property beyond the federal parcel.

More importantly, when the United States government obtained the federal parcel, it also acquired the right to occupy the adjacent 4.8 acre masking area pursuant to a lease agreement with the owner of that property, The Hartford Times, Inc. That agreement expressly authorized the United States government to attach fixtures, trim and remove trees, and build or raze any structures on the leased property. As the trial court

in *Heublein* were found to be inaccurate at that retrial. *Abington Ltd. Partnership* v. *Heublein,* supra, 246 Conn. 832. As the factual findings of the trial court in the present case indicate, the facts that we assumed to be undisputed for purposes of *Heublein* are accurate in all material respects. Cf. footnote 22 of this opinion.

stated, "[i]t cannot be supposed that the government leased th[e] [masking] area . . . with the expectation that it would have no way of setting foot on it if a need arose. Since the only access to that area was from the federal parcel itself, which was to be reached by the access easement, it seems plain that the . . . government expected to reach the leased land around the federal parcel [over Montevideo Road] . . . ." The trial court also concluded "that the lease was entered on the land records of the town of Avon . . . thus putting [Smith, the owner of the servient estate] on notice that the federal government's use of the access easement would be to reach a facility that would include use of both the [federal] parcel . . . and [the] leased land abutting it."[26]

In light of these facts, we are persuaded that it necessarily was within the reasonable contemplation of the parties at the time of the creation of the easement over Montevideo Road that the benefits of that easement might accrue to adjacent property not formally within the terms of the easement. See *Abington Ltd. Partnership* v. *Heublein*, supra, 246 Conn. 829–30.

The facts also support the trial court's determination that the extended easement does not overburden the servitude created by the original easement. With respect to the intentions of the parties when the easement was created, the trial court properly concluded that, in light of the purpose underlying the acquisition of the federal parcel, it reasonably was to be expected that, at a mini-

[26] The trial court noted that Smith, who did not testify at trial, had indicated in response to a request for admission that she was unaware that the United States government leased the masking area. The trial court reasonably concluded, however, that Smith, who had been represented by counsel in connection with the acquisition of the easement over her property, had constructive notice of the lease agreement by virtue of the fact that the lease had been entered in the land records of the town of Avon pertaining to the leased property.

mum, the United States government would construct buildings and install radar dishes, towers and antennae on that property and, upon completion, staff the site with sufficient personnel to operate and maintain the facilities. As the court further concluded, it was readily foreseeable that the easement over Montevideo Road would be used by "army vehicles of all descriptions, including large trucks and equipment for installing, operating, guarding and maintaining radar equipment." Moreover, the court correctly observed that, "[o]n its face, the [easement] taken by the federal government [is] not restricted to those necessary to conduct particular activities . . . . There is no evidence [to suggest] that the federal government obligated itself to any limitation of its functions or that it made any representations to Smith that the operation of a radar site would entail only limited use of the road. It can hardly be supposed that the federal government's ability to conduct Cold War military operations could be restricted by . . . Smith as [the owner of the servient estate], and the terms of the taking support no such conclusion." Finally, the trial court noted that 40 U.S.C § 484 (k) "put landowners on notice that if the government [had] chose[n] to abandon interests in land taken for military purposes, it could be expected that the next use would be an educational institution." For all these reasons, we agree with the trial court that the intended use of the federal parcel as a military installation supports the conclusion that the United States government was entitled, if it had wished, to make intensive use of the easement over Montevideo Road.[27]

---

[27] Indeed, the United States government was free to make any use of the federal parcel that might have been approved by Congress or by executive order. See footnote 11 of this opinion. This potential for a broad grant of authority to the United States government regarding its use of the property further supports the conclusion that the parties necessarily understood that the activity on the federal parcel and, thus, the traffic over the easement, could become substantial.

In light of this fact, we also agree with the trial court that the Science Center's use of the easement to access the after-acquired state parcel is consistent with the intentions and expectations of the parties when the easement was created. As we noted in *Heublein,* "[s]ubject to the proviso that the servitude beneficiary is not entitled to cause unreasonable damages to the servient estate, or interfere unreasonably with its enjoyment . . . the beneficiary of an easement [is permitted] to make any use of the servient estate that is reasonably necessary for the convenient enjoyment of the servitude for its intended purpose. The manner, frequency, and intensity of the beneficiary's use of the servient estate may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude." (Internal quotation marks omitted.) *Abington Ltd. Partnership* v. *Heublein,* supra, 246 Conn. 831, quoting Restatement (Third), Property, Servitudes § 4.10 (Tentative Draft No. 4, 1994) (officially adopted in 1998). Moreover, the evidence adduced at trial suggests that there has been no material increase in the amount of traffic over Montevideo Road attributable to the Science Center since the Science Center opened its 20,000 square foot facility on the state parcel in 1991 and commenced using the roadway to access both the federal parcel and the state parcel.[28] To our knowledge, the plaintiff never has claimed that the Science Center's use of the easement over Montevideo Road to access the federal parcel prior to 1991 consti-

---

[28] Donald LaSalle, the director of the Science Center, testified that even though the building constructed on the state parcel added 20,000 square feet of space to the approximately 13,000 square feet of space available for use on the federal parcel, the amount of traffic over the easement has not increased since the opening of the 20,000 square foot facility because that facility contains equipment that allows the Science Center to transmit its programs directly to other schools, thereby obviating the need for students from those schools to travel to the Science Center.

tuted an overburdening of the servitude. Inasmuch as the traffic over Montevideo Road has not increased since that time, notwithstanding the Science Center's use of the easement to access both the federal and state parcels, the plaintiff cannot prevail on its claim that the Science Center's use of the roadway to reach both parcels constitutes an overburdening of the servitude.[29]

The judgment is affirmed.

In this opinion the other justices concurred.

[29] The plaintiff offers three additional reasons why, in its view, the judgment of the trial court should be reversed. First, the plaintiff, relying on certain language in the trial court's memorandum of decision, contends that the court improperly assigned it the burden of establishing that the Science Center's use of the easement to access the after-acquired state parcel constitutes an overburdening of the easement. Although we agree with the plaintiff that the party seeking to extend an easement under the principles set forth in Carbone v. Vigliotti, supra, 222 Conn. 216, and Abington Ltd. Partnership v. Heublein, supra, 246 Conn. 815, bears the burden of establishing that the easement should be construed to encompass after-acquired property, we reject the claim that the trial court improperly shifted that burden to the plaintiff. At most, the trial court's memorandum of decision is ambiguous on this point. To the extent that the trial court's memorandum of decision may be viewed as ambiguous in regard to the assignment of the burden of proof on the issue of overburdening, "we read an ambiguous record, in the absence of a motion for articulation, to support rather than to undermine the judgment." Water Street Associates Ltd. Partnership v. Innopak Plastics Corp., 230 Conn. 764, 773, 646 A.2d 790 (1994). Although the plaintiff filed a motion for articulation, it did not seek articulation with respect to the trial court's assignment of the burden of proof on the issue of overburdening. Because the plaintiff did not seek the trial court's articulation in that regard, "we must assume [that] the court acted properly." Id., 774.

Second, the plaintiff claims that the trial court improperly rejected its contention that the party seeking to establish that the benefit of an easement appurtenant accrues to after-acquired property—in this case, the Science Center—must do so by clear and convincing evidence. The plaintiff asserts that, in cases such as the present case, the preponderance of the evidence standard is insufficient in light of the burden that an extension of the easement places on the servient estate. We disagree. "Consistent with the heavy burden that [the clear and convincing] standard of proof imposes, courts and legislatures have employed it in constitutional, legislative and common-law contexts involving extremely significant questions of fact." (Emphasis added.) Miller v. Commissioner of Correction, 242 Conn. 745, 796, 700 A.2d 1108 (1997). Although the question of whether an access easement may be found to benefit after-acquired property undeniably is an important one from the standpoint of those persons or entities with an

interest in the dominant or servient estate, we simply are not persuaded that its significance is such as to warrant a departure from the standard of proof that is applicable to the vast majority of factual disputes in civil cases, namely, proof by a preponderance of the evidence.

Finally, the plaintiff claims that the trial court improperly barred it from adducing certain testimony regarding the condition of Montevideo Road from a traffic engineer who had been retained by the Science Center to conduct traffic studies on that road. We decline to review this claim because the plaintiff has failed to address why the exclusion of this proposed testimony, if improper as alleged, was harmful error requiring a new trial. See, e.g., *Ham* v. *Greene*, 248 Conn. 508, 528–29 n.11, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999) (issues not adequately briefed may be deemed abandoned); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 38, 717 A.2d 77 (1998) (same).