Sullivan
No. 2010-534

DAVID AUSTIN *& a.*

v.

LESTER C. SILVER *& a.*

Argued: June 15, 2011
Opinion Issued: September 15, 2011

*Law Offices of Wm. Howard Dunn*, of Claremont (*Carl D. Hanson* on the brief and orally), for the petitioners.

*Buckley and Zopf*, of Claremont (*Michael A. Fuerst* on the brief and orally), for the respondents.

HICKS, J. The petitioners, David, James and Carolyn Austin and Robert Guinto, appeal an order of the Superior Court (*Wageling*, J.), following a bench trial, denying their petition to quiet title and ruling that the respondents, Lester C. and Sophie A. Silver, have a deeded right-of-way over the petitioners' lot. We affirm.

The record reveals the following facts. The parties own land near Rocky Bound Pond in Croydon. The petitioners' lot, referred to as Lot 4, has frontage on the pond. The respondents' lot, referred to as the Silver Lot, is adjacent to the petitioners' lot and lacks frontage on the pond. The parties dispute whether the respondents have a valid right-of-way to pass over the petitioners' lot to access the pond. The trial court considered evidence extrinsic to the deeds to decide this question because it determined that deeds in the parties' chains of title were ambiguous as to whether the right-of-way was reserved for the benefit of the respondents and their predecessors-in-title. Based upon the deeds' language and the extrinsic evidence, the court concluded that the respondents have a deeded right-of-way over the petitioners' lot for the purpose of accessing the pond. This appeal followed.

In an action to quiet title, the burden is on each party to prove good title as against all other parties whose rights may be affected by the court's decree. *Hersh v. Plonski*, 156 N.H. 511, 514 (2007). We will uphold the trial court's determination unless it is erroneous as a matter of law or unsupported by the evidence. *Id.*

On appeal, the petitioners argue that the trial court erred when it determined that certain deeds were ambiguous. They contend that based

upon the plain language of the deeds at issue, the respondents never obtained a right-of-way to cross their land.

■ Resolving this issue requires that we interpret the relevant deeds. The interpretation of deeds in a quiet title dispute is a question of law, ultimately to be resolved by this court. *See Flanagan v. Prudhomme*, 138 N.H. 561, 565 (1994). We review the trial court's deed interpretation *de novo. Mansur v. Muskopf*, 159 N.H. 216, 221 (2009). Our determination of disputed deeds is based upon the parties' intentions gleaned from construing the language of the deed from, as nearly as possible, the position of the parties at the time of the conveyance and in light of surrounding circumstances. *Flanagan*, 138 N.H. at 565-66. We base our judgment on this question of law upon the trial court's findings of fact. *Arcidi v. Town of Rye*, 150 N.H. 694, 701 (2004).

■ If the language of a deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence. *See Flanagan*, 138 N.H. at 566. If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms. *Id.* A deed is patently ambiguous when its language fails to provide sufficient information to describe the conveyance adequately without reference to extrinsic evidence. *Id.* A latent ambiguity exists when the deed's language is clear, but the conveyance described can be applied to two different subjects or is rendered unclear by reference to another document. *Id.*

The right-of-way at issue had its genesis in a 1950 deed from John A. Heath to Donas J. Reney. Heath, at this time, owned both Lot 4 and the Silver Lot, having purchased them from the original landowner, Clinton Barton. The 1950 deed from Heath to Reney conveyed a portion of Heath's land, other than Lot 4 and the Silver Lot, as well as:

> [A] right of way fifteen (15) feet in width Northerly from and adjacent to the Southerly side of Lot 4 . . . , the Southerly line of said right of way to be the Southerly line of Lot 4, this right of way to be for the passage of men, teams and vehicles over the bulldozed private road to the shore of Rocky Bound Pond. This right of way is therefore located on the Southerly side of Lot 4 rather than on the Northerly side . . . . Said right of way shall be used in common with the owners of the lot excepted and reserved from this deed so that the owners of said lot at any time shall also have the right of way from said lot to said shore.

A review of the metes and bounds description of the "lot excepted" by the Heath-Reney deed indicates that the excepted lot was the Silver Lot.

 The trial court ruled that because, when Heath made his conveyance of land to Reney, he continued to own both Lot 4 and the Silver Lot, he could not create a right-of-way over Lot 4 for the benefit of the Silver Lot. *See Soukup v. Brooks*, 159 N.H. 9, 14-15 (2009). As the trial court recognized:

> No man can have an easement in his own land. If the dominant and servient tenements are the property of the same owner, the exercise of the right, which in other cases would be the subject of an easement, is, during the continuance of his ownership, one of the ordinary rights of property only, which he may vary or determine at pleasure, without in any way increasing or diminishing those rights. The dominant and servient tenements must, therefore, belong to different persons; immediately they become the property of one person, the inferior right of easement is merged in the higher title of ownership.

*Stevens v. Dennett*, 51 N.H. 324, 330 (1872); *see Soukup*, 159 N.H. at 14-15. Because, as a result of the Heath-Reney deed, the dominant estate (the Silver Lot) and the servient estate (Lot 4) remained in the common ownership of Heath, this deed did not create a right-of-way over Lot 4 for the benefit of the Silver Lot. *Stevens*, 51 N.H. at 330.

Lot 4 and the Silver Lot continued to have unity of ownership until 1961 when Clifford Silver, who had acquired the lots from Heath's widow, conveyed Lot 4 to Lawrence and Marjorie W. Wilsey. The Silver-Wilsey deed conveyed Lot 4 "[e]xcepting and reserving" to Reney and his heirs and assigns a right of way described as follows:

> [A] right of way fifteen (15) feet in width Northerly from and adjacent to the Southerly side of Lot Four . . . , the Southerly line of said right of way to be the Southerly line of Lot Four; this right of way to be for the passage of men, teams and vehicles over the bulldozed private road to the shore of Rockybound Pond. This right of way is on the Southerly side of Lot Four rather than on the northerly side . . . . Said right of way shall be used in common with others legally entitled thereto.

Unlike the Heath-Reney deed, the Silver-Wilsey deed did not explicitly state that the right-of-way was reserved for the benefit of the Silver Lot. Rather, the Silver-Wilsey deed merely stated that the right-of-way over Lot 4 was to "be used in common with others legally entitled thereto."

Later deeds in the chain of title for Lot 4 referred to the right-of-way similarly, if not identically. In 1979, the Wilseys conveyed Lot 4 to John E. and Suzanne H. Stevens. The Wilsey-Stevens deed referred to the right-of-way using the same language as the Silver-Wilsey deed. Like the Silver-Wilsey deed, the Wilsey-Stevens deed described the right-of-way as being fifteen feet in width northerly from and adjacent to the southern side of Lot 4, explained that the purpose of the easement was to access the pond's shore, and stated that the right-of-way was reserved to Reney and his heirs and assigns and was to "be used in common with others legally entitled thereto."

In 1984, the Stevens conveyed Lot 4 to James and Rose Marie Geschwinder, who conveyed it to petitioners Guinto and David Austin. Both deeds used the same language as the prior deeds to describe the right-of-way and explain its purpose and for whom it was reserved.

In 2004, Guinto and David Austin retained an undivided one-half interest in Lot 4 and conveyed the remaining undivided one-half interest to petitioners James C. and Carolyn Austin. The 2004 deed, like the other deeds in the petitioners' chain of title, described the right-of-way as being fifteen feet wide, to the north of and adjacent to the southern side of Lot 4, for the purpose of accessing the pond's shore. Like the prior deeds in the petitioners' chain of title, the 2004 deed stated that the right-of-way is "[e]xcept[ed] and reserv[ed]" to Reney and his heirs and assigns and "shall be used in common with others legally entitled thereto."

The record shows that Clifford Silver retained ownership of the Silver Lot until 1965, when he conveyed it to Lester C. and Lillian Silver. Like the deeds in Lot 4's chain of title, the 1965 Silver-Silver deed "except[ed] and reserv[ed]" for Reney and his heirs and assigns a right-of-way fifteen feet wide over Lot 4 "for the passage of men, teams and vehicles" to access "the shore of Rockybound Pond" and to "be used in common with others legally entitled thereto."

The Silver Lot was conveyed to the respondents in 1998. The respondents' 1998 deed provided that, in addition to conveying the Silver Lot, Lester C. and Lillian Silver conveyed to:

> the grantees, their heirs and assigns a right of way fifteen (15) feet in width Northerly from and adjacent to the Southerly side of Lot 4 . . . , the Southerly line of said right of way to be the Southerly line of Lot 4; this right of way to be for the passage of men, teams and vehicles over the bulldozed private road to the shore of Rockybound Pond. This right of way is on the Southerly side of Lot 4 rather than on the northerly side . . . . Said right of way shall be used in common with others legally entitled thereto.

This language did not refer to Reney, although it referred to the same right-of-way that had previously been reserved for Reney's use.

The petitioners contend that the deeds in the parties' chains of title unambiguously reserved the right-of-way over Lot 4 solely for Reney and his heirs and assigns, and did not reserve the right-of-way for the benefit of the Silver Lot. They argue that the phrase "others legally entitled thereto" does not create an ambiguity as to whether the right-of-way was reserved for the benefit of the Silver Lot and that, therefore, the trial court erred when it considered extrinsic evidence to construe the deeds. The petitioners further assert that the 1998 deed to the respondents "is the first in the Silver chain of title which purportedly grants an interest in the 15-foot right of way for the benefit of the Silver Lot." They contend, however, that because in 1998, Lester C. and Lillian Silver had no interest in the right-of-way themselves, they could not have granted such an interest to the respondents. Accordingly, the petitioners assert, the 1998 deed purporting to convey the right-of-way to the respondents was ineffective.

■ We disagree with the petitioners that the deeds at issue were unambiguous. As the trial court correctly ruled, the identity of the "others legally entitled" to use of the Reney right-of-way over Lot 4 cannot be discerned solely by referring to the language of the pertinent deeds. The deeds are, thus, patently ambiguous. *See Flanagan*, 138 N.H. at 566. Accordingly, contrary to the petitioners' assertions, the trial court did not err when it looked to extrinsic evidence to clarify the meaning of the phrase "others legally entitled." *See id.*

Based upon its review of extrinsic evidence, the trial court found "substantial evidence" that Clifford Silver purchased Lot 4 and the Silver Lot "so that he could utilize the pond for fishing purposes." The court also found that when Clifford Silver conveyed Lot 4 to the Wilseys he included language in the deed referencing the Reney right-of-way and stated that "others were legally entitled" to it so as to create a right-of-way over Lot 4 for his own benefit. The court found that when Clifford Silver conveyed Lot 4 to the Wilseys, he "did not intend to deprive himself of the right to pass over Lot 4 to access the pond." As the petitioners do not challenge these factual findings on appeal, we assume that the evidence supports them and that they are not legally erroneous. *See Hersh*, 156 N.H. at 514.

■ Given these factual findings, which the petitioners have not disputed, we reject their assertion that Lester C. and Lillian Silver lacked any interest in the right-of-way. To the contrary, as the trial court found, Clifford Silver reserved the right-of-way for his own benefit, as owner of the Silver Lot, when he conveyed Lot 4 to the Wilseys. He then conveyed his

interest in the right-of-way to Lester C. and Lillian Silver, who later conveyed their interest to the respondents.

For all of the above reasons, therefore, we uphold the trial court's determination based upon the language of the pertinent deeds as well as its factual findings regarding the circumstances surrounding the relevant conveyances, that the respondents, as owners of the Silver Lot, have a deeded right-of-way over Lot 4 for the purpose of accessing Rocky Bound Pond. In light of our decision, we need not address the parties' remaining arguments regarding easement by implication and easement by prescription.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.