NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2013-354


THOMAS ETTINGER & a.

v.

POMEROY LIMITED PARTNERSHIP & a.

Argued:  March 5, 2014
Opinion Issued:  July 2, 2014


Hastings Law Office, P.A., of Fryeburg, Maine (Peter J. Malia, Jr. on the brief and orally), for the petitioners.


Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth (Kenneth D. Murphy on the brief and orally), for respondent The Nature Conservancy.


Orr & Reno, P.A., of Concord (Jeremy D. Eggleton), for respondent Pomeroy Limited Partnership, filed no brief.


DALIANIS, C.J.  The petitioners, Thomas Ettinger, Margaret Ettinger, and Ettinger Family Holdings, Inc. (collectively, the Ettingers), appeal an order of the Superior Court (Houran, J.) denying their summary judgment motion and granting summary judgment to the respondents, Pomeroy Limited Partnership

(Pomeroy Limited) and The Nature Conservancy (TNC), on the petitioners' petition for declaratory judgment. We reverse and remand.

The record establishes the following facts. The parties own real property on or around Silver Lake in Madison. The Ettingers own the servient estate identified on Madison Tax Map 121 as Lot 4. The original dominant estate, Lot 160, is separated from Lot 4 by lots owned by the Seasholeses and the Brookses, who are not parties to this litigation. Lot 160 is accessed by a private roadway known as Winter Road Extension. There is no dispute that Lot 160 has an easement to use Winter Road Extension.

The earliest mention of the easement in Lot 160's chain of title is contained in a 1930 deed from Rebecca H. Cummings to Logan R. Dickie. The 1930 deed from Cummings to Dickie conveyed Lot 160:

> Together with the right to use the road leading from the Town of Madison to said Lot in common with the said grantor, his heirs and assigns and the owners and occupiers for the time being of all other houses or camps adjoining said road, and paying from time to time due proportion with other owners, whose lands abut upon said road, according to the extent of his or her frontage, of the expense of maintaining said road in proper repair, until the same shall be accepted and laid out by the town or other local authorities.

This language appears in subsequent deeds, in essentially the same form, up to and including the conveyance to Thomas W. Pomeroy, Jr. and Frances Pomeroy (the Pomeroys) in 1953. In 1965, twelve years after they obtained Lot 160, the Pomeroys obtained Lot 161, which abutted Lot 160. The Pomeroys' deed to Lot 161 does not refer to the Winter Road Extension easement.

In 1996, after Frances Pomeroy died, Thomas W. Pomeroy, Jr., deeded Lots 160 and 161 to Pomeroy Limited. That deed included the easement rights to Winter Road Extension, providing, in pertinent part: "TOGETHER with the right to use the private road known as Winter Road Extension leading from the Town of Madison for the purposes of ingress and egress to and from the above described Parcel One and Parcel Two . . . ."

In 2010, Pomeroy Limited conveyed 31.63 acres of its property to TNC. The conveyance included land that comprised most of Lot 161 and a portion of Lot 160. Pomeroy Limited retained a 7.4-acre parcel that included the physical terminus of Winter Road Extension. The deed to TNC conveyed the "right of way over Winter Road Extension" and a "right of way over the remaining land of [Pomeroy Limited]." The deed to TNC also stated that the 31.63 acres conveyed are "not to be considered a separate lot of record," but are to "merge with the

2

abutting land of [TNC]."  The reference to "the abutting land" owned by TNC refers to TNC's nature preserve, known as Ossipee Pine Barrens Preserve, containing approximately 362 acres.

Following the conveyance from Pomeroy Limited to TNC, the Ettingers filed the instant action, asserting that the easement conveyed to TNC may benefit only Lot 160, and may not benefit Lot 161 or any of the rest of TNC's land with which Lots 160 and 161 have merged.  Although the Ettingers at one time contended that the easement was overburdened by use, they no longer make that claim. They now claim that the easement was overburdened by extension.  In ruling upon the parties' competing summary judgment motions, the trial court relied solely upon the language of the pertinent deeds.  The court concluded that although "the easement language in this case presents a close[ ]" question, it "does not prohibit use to access after-acquired abutting parcels."

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party."  Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. ___, ____, 82 A.3d 225, 227 (2013).  "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment."  Id. at ___, 82 A.3d at 227.  "We review the trial court's application of the law to the facts de novo."  Id. at ___, 82 A.3d at 227.

Resolving the issues in this appeal requires that we interpret the deeds in Lot 160's chain of title.  The proper interpretation of a deed is a question of law for this court.  Appletree Mall Assocs. v. Ravenna Inv. Assocs., 162 N.H. 344, 347 (2011).  As a question of law, we review the trial court's interpretation of a deed de novo.  Id.  In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time.  Id.  We base our judgment on this question of law upon the trial court's findings of fact.  Id.  If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence.  Id.  If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms. Flanagan v. Prudhomme, 138 N.H. 561, 566 (1994).  A deed may have either a patent or a latent ambiguity.  Id.  A deed is patently ambiguous when the language in the deed does not provide sufficient information to adequately describe the conveyance without reference to extrinsic evidence.  Id.  A latent ambiguity exists when the language in the deed is clear, but the conveyance described can be applied to two different subjects or is rendered unclear by reference to another document.  Id.

3

The Ettingers concede that TNC may use the Winter Road Extension easement to access that portion of Lot 160 that TNC now owns. However, they argue that TNC may not use the easement to access either the land that previously constituted Lot 161 or the Ossipee Pine Barrens Preserve. They contend that the language of the 1930 deed from Cummings to Dickie, which constitutes the first reference to the Winter Road Extension easement, is ambiguous, and that when extrinsic evidence is reviewed, it establishes that the easement was not intended to be used to benefit Lot 161 or any other non-dominant, after-acquired property. They argue that when the Pomeroys purchased Lot 161 in 1965, the Pomeroys had no right to extend to Lot 161 the easement conveyed with their previously purchased property, Lot 160.

TNC counters that "[t]he specific grant of the easement by Cummings in the 1930 deed is clear," and that there is no need to resort to extrinsic evidence. TNC contends that pursuant to the clear language of the 1930 deed, the easement may be used to benefit non-dominant, after-acquired estates. Alternatively, TNC argues that even if extrinsic evidence is reviewed, it does not establish any intent to preclude the Winter Road Extension easement from being used to benefit non-dominant, after-acquired properties.

"The general modern rule regarding the interplay between an easement appurtenant and a nondominant estate is that an appurtenant easement cannot be used to serve a nondominant estate." Il Giardino, LLC v. Belle Haven Land Co., 757 A.2d 1103, 1111 (Conn. 2000) (quotation and brackets omitted); see 1 Restatement (Third) Property, Servitudes § 4.11 (2000); see also J. Bruce & J. Ely, Jr., The Law of Easements and Licenses in Land § 8.14, at 8-49 to 8-52 (2011) ("The dominant owner may not use an appurtenant easement to benefit any property other than the dominant estate" because extending an easement "to serve nondominant land represents an overburden of the servient estate, regardless of the amount of usage." (citing cases)). "The purpose undergirding the rule is that the owner of the easement appurtenant may not materially increase the burden of the easement upon the servient estate or impose a new or additional burden." Il Giardino, LLC, 757 A.2d at 1111. "The doctrine was intended to protect the servient estate from the use of an easement in a manner or to an extent not within the reasonable expectations of the parties at the time of its creation." Id. (quotation omitted).

We have departed from this general rule in two cases: Heartz v. City of Concord, 148 N.H. 325, 330-31 (2002), and Soukup v. Brooks, 159 N.H. 9, 19 (2009). Heartz involved three parcels in Concord: 66, 66½, and 68 North State Street. Heartz, 148 N.H. at 326; see Soukup, 159 N.H. at 19. Lot 68 was owned by the Greek Orthodox Community, Inc., which sought to purchase lot 66½ to construct a parking lot that would benefit lot 68. Heartz, 148 N.H. at 326; see Soukup, 159 N.H. at 19. Lot 66½ had an easement to access the lot through lot 66. Heartz, 148 N.H. at 326; Soukup, 159 N.H. at 19. On appeal

4

the owner of lot 66 argued that using the easement conveyed with lot 66½ to benefit lot 68 was "illegal because the easement will benefit a non-dominant . . . tenement." Heartz, 148 N.H. at 330. We held that the church could use lot 66½'s easement to benefit lot 68 based upon the language of the pertinent deed, which allowed the easement to be used "at all times and for all purposes." Id. at 330 (quotation and emphasis omitted). We concluded that this "clear and unambiguous language" did not "indicate[ ] an intention to prevent non-dominant . . . tenements from benefitting from the easement." Id. at 331.

Soukup involved three contiguous lots: (1) a landlocked lot in Lyman (the Lyman lot); (2) a lot in Lisbon owned by the Brookses (the Brooks lot); and (3) another lot in Lisbon owned by the Soukups (the Soukup lot). Soukup, 159 N.H. at 11. The Lyman lot had an easement over the Soukup lot. Id. at 11-12, 17. The Brookses purchased the Brooks lot in 1995 and purchased the Lyman lot approximately one year later. Id. at 11, 12. On appeal, the Soukups argued that the easement was intended only for the benefit of the Lyman lot and could not be used by the Brookses to access the previously-purchased Brooks lot. Id. at 19. We disagreed. Id. The deed that conveyed the Lyman lot also conveyed a perpetual "**RIGHT** and **EASEMENT** for all purposes." Id. at 17 (quotation omitted). We held that this language did not preclude use of the easement to benefit the Brooks lot in addition to the Lyman lot. Id. at 19.

In Heartz and Soukup, we aligned ourselves with courts that have "concluded that the mere addition of other land to the dominant estate does not necessarily constitute an overburden or misuse of [an] easement." Abington Ltd. Partnership v. Heublein, 778 A.2d 885, 892 (Conn. 2001) (quotation and brackets omitted). In rejecting a bright-line rule, we implied that the determination of whether an easement may be applied to a non-dominant estate "requires inquiry into the intent of the parties when the easement was created." Id. at 892-93 (quotation omitted). In Heartz and Soukup, to determine that intent, we relied upon the plain and unambiguous language of the deed that created the easement. See Heartz, 148 N.H. at 331-32; Soukup, 159 N.H. at 19. In both cases, the deeds at issue conveyed an easement "for all purposes." Heartz, 148 N.H. at 330; Soukup, 159 N.H. at 17.

In the instant case, we are unable to rely upon the language of the 1930 deed alone to determine whether the easement was intended to benefit an after-acquired, non-dominant estate. The 1930 deed is ambiguous in that respect. See Austin v. Silver, 162 N.H. 352, 357 (2011); see also Flanagan, 138 N.H. at 566. The 1930 deed does not grant an easement "for all purposes." It grants an easement "to use" Winter Road Extension. Moreover, that easement is "in common with the said grantor, his heirs and assigns and the owners and occupiers for the time being of all other houses or camps adjoining said road." In context, it is unclear whether the "right to use the road" held "in common"

5

with the grantor and with "the owners and occupiers for the time being of all other houses or camps adjoining said road" may be used to benefit Lot 161 when that lot was after-acquired, is non-dominant, and does not "adjoin[ ] said road." Nor is it clear whether the easement may be used to benefit an "owner[ ] or occupier[ ]," who was not an owner or occupier when the easement was created ("for the time being").

Because the language of the 1930 deed that created the Winter Road Extension easement is ambiguous, it is necessary to rely upon extrinsic evidence to discern the intent of the parties creating the easement. Thus, to the extent that the trial court relied solely upon the language of the 1930 deed to determine the intent of the parties creating the easement, it erred. Accordingly, we reverse the trial court's order and remand for such further proceedings as the court may deem necessary.

Our decision does not preclude the trial court from allowing the parties to supplement their summary judgment pleadings to develop the record further. Nor does it preclude the trial court from holding an evidentiary hearing should it decide that one is necessary. Because the parties have not yet had an opportunity to litigate the issue, we express no opinion as to which party has the burden, on remand, to establish that the easement does or does not encompass after-acquired property. See Heublein, 778 A.2d at 895 n.29 (burden is on party seeking to extend the easement originally conveyed). In deciding whether the easement can benefit property other than lot 160, the trial court may examine whether it "was within the reasonable contemplation of the parties at the time of the creation of the easement . . . that the benefits of that easement might accrue to adjacent property not formally within the terms of the easement." Id. at 894. The court may also examine "the proposed use and the likely development of the dominant estate." Id. at 893.

Reversed and remanded.

HICKS, CONBOY, and LYNN, JJ., concurred.

6