NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0333

PAUL LYNN & a.

v.

WENTWORTH BY THE SEA MASTER ASSOCIATION

Argued: January 7, 2016
Opinion Issued: May 27, 2016

Hinckley, Allen & Snyder, LLP, of Concord (Richard Y. Uchida and Daniel M. Deschenes on the brief, and Mr. Deschenes orally), for the plaintiffs.

Sheehan Phinney Bass + Green, PA, of Manchester (Michael C. Harvell and Megan C. Carrier on the brief, and Mr. Harvell orally), for the defendant.

LYNN, J. The plaintiffs, Paul and Sara Lynn, appeal an order of the Superior Court (Anderson, J.) granting summary judgment to the defendant, Wentworth By The Sea Master Association (association), and denying summary judgment to the plaintiffs. The parties dispute the validity of an easement on the plaintiffs' property that provides members of the association beach access. Because we conclude that an easement was validly created, we affirm.

I

The record supports the following pertinent facts. The association governs a residential development, comprised of over 100 homes as well as

common areas, in New Castle. The plaintiffs purchased their property, Lot 17, by warranty deed dated June 30, 2011. The easement at issue is a walkway that provides beach access to association members and their guests. It runs from Little Harbor Road along Lot 17 and the neighboring lot before cutting across Lot 17 to the water.

Lot 17 was the site of the first house constructed in the development, and was first conveyed to the plaintiffs' predecessors in interest, the Horgans, by warranty deed dated April 28, 1995. Both Horgans testified during deposition that the easement existed on the property before they bought it from the developer. Mrs. Horgan recalled doing a "walk-through" with a realtor, and Mr. Horgan recalled speaking with a realtor on multiple occasions and meeting at least once with David Caligaris, a representative of the developer. Mr. Horgan testified that he knew there was an easement over the property when he and his wife purchased it. Caligaris testified that he and Mr. Horgan had a "handshake" on the existence of the easement, although its precise location may have been unclear. The Horgans also testified that they had no problems with the easement during the time that they lived on the property.

The deed from the developer to the Horgans states: "This Conveyance is subject to all utility and other applicable easements or restrictions of record, or which may be recorded in the future with respect to the Wentworth By The Sea Development o[f] the Little Harbor Development." This language is also present in the plaintiffs' deed. No deed in the chain of title specifically mentions an easement providing beach access, although other easements are specifically mentioned.

A site plan for the development, recorded in September 1994 by the association's predecessor, did not show the easement. On May 11, 1995 — 13 days after the Horgans purchased the property — a revised site plan, which depicted the easement, was recorded. The association's predecessor recorded a Declaration of Easement in April 1996, which stated:

> An access easement in favor of NC Wentworth, LLC, and its successors, the Wentworth By The Sea Master Association, or any successor master association, over or upon the easement area shown as "Additional Access Easement" on Lot 17, on a plan entitled "Easement Plan for Lot 17 and 23 of Little [H]arbor, Wentworth By The Sea" to be recorded at the Rockingham County Registry of Deeds.

The predecessor also filed an Easement Plan in April 1996 depicting the easement running over the property.

The Horgans' deed also states: "Title to and use of the above lot is subject to the Declaration of the Wentworth By The Sea Master Association, Covenants,

Conditions and Restrictions, recorded at the Rockingham County Registry of Deeds at Book 3026, Page 2596, and amendments thereto recorded in said Registry." The association's Covenants, Conditions, and Restrictions (CCR) states, in relevant part:

> The Wentworth By the Sea development is shown on the Master Site Plan dated February 3, 1993, and recorded . . . . The improvements, both existing and proposed, are shown on that Plan . . . or by any subsequent Site Plans. All such plans recorded in connection with the property shall, collectively or as a composite, be deemed to be the Master Site Plan(s).

The record establishes that the plaintiffs had actual notice of the site plan, revised site plan, Declaration of Easement, Easement Plan, and the easement itself prior to purchasing the property. The Easement Plan was specifically mentioned in their deed: "Being the same premises shown on a plan entitled Easement Plan for Lot 17 & 23 at Little Harbor at Wentworth By The Sea recorded in the Rockingham County Registry of Deeds as Plan No. D-24600."

In January 2014, the plaintiffs filed suit seeking injunctive relief to prevent the association from using the easement, and a declaratory judgment that the easement was invalid and unenforceable. The association counterclaimed, and both parties moved for summary judgment. In its objection to the plaintiffs' motion for partial summary judgment, the association submitted affidavits from the Horgans and documents that were presented to the New Castle Planning Board, which had not previously been disclosed to the plaintiffs. The plaintiffs moved to exclude this evidence on the basis that it was not timely produced. After a hearing, the court denied the plaintiffs' motion to exclude and reopened discovery for the limited purpose of allowing the plaintiffs to take the depositions of the Horgans and Caligaris. The parties then filed supplemental memoranda addressing the additional evidence.

The trial court denied the plaintiffs' motion for partial summary judgment and granted summary judgment to the association. The court determined that the easement was validly created. Specifically, the court concluded that "an easement by implication was created when the Horgans purchased the property." The court noted "the uncontroverted testimony from the Horgans and Caligaris that the easement was agreed to before the Horgans bought the property—it was just not recorded until two weeks later" because "the exact metes and bounds were not yet finalized." "[T]he Horgans testified unequivocally that they were aware tha[t] an easement ran over their property prior to the purchase," and Mr. Horgan "unquestionably knew that the easement existed, what it was for, and generally where it fell." Thus, the court

3

decided that "the easement arose by implication when the Horgans, having agreed to the easement, purchased the property."

The court also noted that the deed contained a "catch-all provision" subjecting the property to restrictions in the future, which Caligaris believed allowed the easement. In addition, the court pointed to evidence of the parties' conduct, namely that the Horgans never had any problems with or complaints about people using the easement, which demonstrated that an easement existed on the property.

The court rejected the plaintiffs' argument that the Horgans had agreed only to a revocable license because "the Horgans testified consistently that an easement went over their land" and there was "no evidence to suggest" that the interest was a revocable license instead. This appeal followed.

II

On appeal, the plaintiffs argue that the trial court erred by: (1) concluding that a valid easement was created by implication; (2) denying the motion to exclude the Horgan affidavits and other evidence; and (3) improperly resolving material issues of fact. The plaintiffs further contend that no recorded documents created the easement, and that, at best, a revocable license was created. The association argues that the trial court properly found that the easement arose by implication as part of a planned development, and that the right to create future easements was reserved in the Horgan deed and the CCR. Additionally, the association contends that several of the plaintiffs' arguments are not preserved for appeal.

A

We first address the plaintiffs' contention that the trial court erred by admitting evidence produced after the initial close of discovery, including the Horgans' affidavits and planning board documents. "We review the trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard." Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 832 (2005). The plaintiffs, therefore, "must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of [their] case." Id.

The only prejudice that the plaintiffs identified at the hearing was that they did not have the opportunity to depose the Horgans before discovery closed. The trial court, however, reopened discovery so that the plaintiffs could depose the Horgans and Caligaris, which they did. Both parties then filed supplemental briefs before the court made its ruling. Because the plaintiffs have not demonstrated that their case was prejudiced in any way, we conclude

4

that the trial court did not unsustainably exercise its discretion by admitting the evidence.

B

The issue before us is whether an easement was validly created. The trial court ruled that an implied easement had been created. The plaintiffs argue that the trial court erred by ruling that an easement by implication arose based upon an oral agreement between the Horgans and the association's predecessor because the agreement fails to establish the necessary elements for an easement by implication. They further argue that an easement could not be created by the oral agreement alone because that would violate the Statute of Frauds. See RSA 506:1 (2010); see also RSA 477:7, :15 (2013). The plaintiffs contend that the necessary elements are those needed to establish an easement by prior use, which the trial court recited in its order, see Blaisdell v. Raab, 132 N.H. 711, 716 (1990), but which do not exist here. The association argues that the trial court did not find an easement by prior use, but rather, ruled that a different type of implied easement — an easement by common plan or development — was created. The association further contends that the evidence supports the court's determination.

The parties dispute what type of implied easement is at issue. We conclude, however, that neither party's position is correct. We agree with the plaintiffs that an easement implied by prior use does not exist in this case. We note, however, that although the trial court recited the elements necessary for the existence of such an easement, it did not attempt to describe the evidence supporting those elements, nor did it appear to rely upon such elements for its analysis. We also do not agree with the association that an implied easement by common plan exists. See Soukup v. Brooks, 159 N.H. 9, 13 (2009) (agreeing that because the case did "not involve reciprocal servitudes," it did "not involve the implication of servitudes pursuant to Restatement (Third) of Prop.: Servitudes § 2.14 [2000] [Servitudes Implied from General Plan]"). We conclude instead that an express easement was created.

"An easement is a nonpossessory interest in real property that can be created by written conveyance, prescription or implication." Id. (quotation omitted). The plaintiffs assert that no recorded documents created the easement prior to the sale of Lot 17 to the Horgans or reserved the right to impose it after the sale. We disagree.

We have said that an easement may be created "by a written conveyance and a plan together." Id. at 14; see also Close v. Fisette, 146 N.H. 480, 483-84 (2001). In Close, we held that an "easement agreement coupled with [an] easement plan independently created an easement." Close, 146 N.H. at 483. In that case, an easement agreement, which was signed by both parties and recorded, granted the right to use a right of way shown on an easement plan.

5

Id. at 483-84. Although the plan itself was not recorded, the agreement "clearly reference[d] a plan, thus providing inquiry notice of its existence." Id. at 484. We concluded that the "two documents [were] sufficient to create an easement." Id.

In Soukup, we held that a deed and a plan together created an easement. Soukup, 159 N.H. at 19. In that case, an easement plan — a subdivision plat depicting the easement — was recorded. Id. at 11. We stated that a plan alone was not sufficient to convey an easement. Id. at 13-14. The question before us, then, was "whether there [was] a written instrument conveying or reserving the alleged easement depicted in the plan." Id. at 14. We concluded that the deed was such an instrument because it "expressly convey[ed] an easement." Id. at 17.

The issue before us here is similar to that in Soukup. Here, a site plan depicting the easement over Lot 17 is recorded. This version of the plan was recorded 13 days after the property was conveyed to the Horgans, but had been submitted to and approved by the planning board prior to the sale. The plaintiffs argue that the fact that this plan was not recorded until after the conveyance is significant. We disagree. The plan was approved prior to the sale and recorded a short time later. The CCR acknowledges that subsequent site plans may be recorded, but that such plans become part of the master site plan. Further, the Horgan deed recognizes that the property is subject to the CCR. The plan depicting the easement, therefore, is valid, notwithstanding that it was recorded after the property was conveyed. See also Close, 146 N.H. at 484 (holding that an easement agreement and an unrecorded easement plan created an easement). The question is whether another document conveyed or reserved the right to create the easement. We conclude that, in this case, the deed, CCR, and site plan together created the easement over Lot 17.

Although the trial court ruled that an implied easement was created, it noted that the deed to the Horgans contained a "catch-all provision," which the developer believed allowed a restriction to be placed on the property in the future. Nonetheless, the trial court made no explicit ruling on whether an express easement was created. Although we could remand to the trial court to rule on this issue in the first instance, because it is ultimately a question of law, we will address it in the interest of judicial economy. See Soukup, 159 N.H. at 16.

"The proper interpretation of a deed is a question of law for this court." Ettinger v. Pomeroy Ltd. P'ship, 166 N.H. 447, 450 (2014). "As a question of law, we review the trial court's interpretation of a deed de novo." Id. "In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time." Id. "If the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence." Id.

"If, however, the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms." Id.

The Horgan deed stated: "This Conveyance is subject to all utility and other applicable easements or restrictions of record, or which may be recorded in the future with respect to the Wentworth By The Sea Development o[f] the Little Harbor Development." The plaintiffs argue that this language "cannot be read to allow the Developer to unilaterally encumber Lot 17 with the Ocean Access Easement after it was sold." In support, they point to Appletree Mall Associates, LLC v. Ravenna Investment Associates, 162 N.H. 344 (2011), in which we stated that "a mere 'subject to' reference to a recorded document is insufficient to resurrect an otherwise invalid easement." Appletree, 162 N.H. at 349 (quotation and ellipsis omitted). In Appletree, the first deed conveyed Lots 2 and 6 subject to the easement at issue. Id. at 347. However, the deed "did not create an easement . . . because it conveyed both the dominant estate (Lot 2) and the servient estate (Lot 6) to the same owner." Id. A later deed conveyed Lot 2 subject to all easements of record and referenced the first deed. Id. at 348. Appletree argued that this language created the easement. Id. We stated that "[t]he phrase 'subject to all easements' in a conveyance means 'subject to all valid easements,'" id. (quotation omitted), and concluded that "the reference to the easements contained in the [first] deed was insufficient to give rise to" the easement, id. at 349.

Relying upon this holding, the plaintiffs argue that similar language in the Horgan deed does not create the easement or reserve the right to create it in the future. However, there is an important distinction between the language of the deed in Appletree and the Horgan deed. Both deeds convey their respective properties subject to all easements of record, but the Horgan deed further conveys Lot 17 subject to all easements "which may be recorded in the future." At oral argument, the plaintiffs suggested that interpreting this phrase as reserving the right to unilaterally create any and all easements after the property is conveyed would be absurd. We agree that in order for the deed to be interpreted in this fashion, the language reserving the right would have to be more explicit than the language here. However, the language here must have some meaning. Cf. Stevens v. Underhill, 67 N.H. 68, 76 (1883) (Carpenter, J., dissenting) (in construing a will, "[r]eason and common sense require the application of the wholesome doctrine of the ancient rule that effect, if possible, is to be given to every word"). In this sense, the deed is ambiguous as to what the parties intended, so we look to extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance. See Ettinger, 166 N.H. at 450.

Such evidence shows that the parties agreed to an easement, and that it was not unilaterally created. As the trial court noted, the Horgans and Caligaris were consistent in their testimony that the Horgans knew of the

7

easement before they purchased Lot 17.  Because Lot 17 was the first property sold in the development, the circumstances were such that not all details about the property or the community had been finalized.  Caligaris stated that the deed's language acted as a "catch-all" that allowed them to precisely define the easement later.  Cf. Duxbury-Fox v. Shakhnovich, 159 N.H. 275, 282 (2009) (recognizing that "where the location of a deeded right of way is uncertain, it may be clarified by the agreement of subsequent owners").  The conduct of the parties also points to an intent to create an easement.  The walkway was built over the Horgans' property, with no complaint from the Horgans.  In fact, the easement was not challenged or disputed for nearly 20 years, until the plaintiffs filed the current suit.  See Morton v. State, 104 N.H. 134, 142 (1962) (stating that the fact that "[n]o question was ever raised as to [the reservation of easements] until the plaintiff brought the present proceedings" was "a further indication of the intent of" the parties).

These facts and circumstances support the conclusion that the language in the Horgan deed intended to convey an easement over the property.  Although the deed may not have been as artfully drafted as it could have been, we have stated that "the construction of [a] deed is not to be determined by the application of arbitrary rules, but by ascertaining the true meaning and real intention of the parties."  Sandford v. Boss, 76 N.H. 476, 480 (1912); see also Chase v. Nelson, 507 N.E.2d 640, 643 (Ind. Ct. App. 1987) ("[A]lthough the portion of the deed creating the easement is not a model of draftsmanship, it suffices to clearly express the [grantors'] intent to establish the . . . easement.").  "[T]he meaning of the parties is to be ascertained from all the competent evidence, which includes the circumstances under which the language was used as well as the words themselves."  Sandford, 76 N.H. at 480.

In Soukup, we held that a plan and a deed referencing the plan created an easement.  Soukup, 159 N.H. at 19.  Although the deed in this case does not reference the plan itself, it does reference the CCR, which in turn references the site plans.  Along with the evidence of the parties' intent, these documents taken together are sufficient to create the easement over Lot 17.

Because our holding ultimately relies upon the interpretation of the Horgan deed, which was signed and recorded, and is not based solely upon an oral agreement between the parties, the Statute of Frauds is satisfied.  See RSA 506:1 ("No action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged . . . .").  Additionally, the written conveyance, and the parties' intent, created an easement, not a revocable license.  See Locke Lake Colony Assoc. v. Town of Barnstead, 126 N.H. 136, 139 (1985) ("[T]he intent of the parties is what determines whether an interest in land is a license or an easement.  In the case of an ambiguous instrument, the intent of the parties may be derived by reference to extrinsic

8

evidence and the circumstances surrounding the conveyance." (quotation and citations omitted)).

In light of our ruling, we find it unnecessary to address the association's preservation arguments.

C

The plaintiffs argue that the trial court erred in granting summary judgment to the association because the court resolved issues of material fact in favor of the association. "In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Guare v. State of N.H., 167 N.H. 658, 661 (2015). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. "A fact is material if it affects the outcome of the litigation under the applicable substantive law." Bond v. Martineau, 164 N.H. 210, 213 (2012).

The plaintiffs point to discrepancies in the testimony of the Horgans and Caligaris. Specifically, they argue that there is a dispute as to whether Mr. Horgan met with Caligaris about the easement before or after purchasing the property and whether the Horgans were paid $1,000 to alter the easement. The question of when the Horgans met with the developer is immaterial because, as the trial court noted, they testified consistently and unequivocally that they knew about the easement before they bought Lot 17. How that knowledge arose, as well as whether they received consideration for moving the easement at a later time, does not affect the outcome of this case. Their testimony and conduct, coupled with the written documents, entitle the association to judgment in its favor as a matter of law.

Affirmed.

DALIANIS, C.J., and CONBOY, J., concurred.

9