# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0301, William Ryan & a. v. Dawn Ryan, the court on October 25, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The issue on appeal is whether the Superior Court (Temple, J.) erred in determining that the defendant, Dawn Ryan, is prohibited from using an easement to access after-acquired property. We affirm.

### I.     Background

The following facts were found by the trial court or are otherwise supported by the record. The parties own abutting parcels in Wilton with frontage on Stage Coach Road. In 1996, the parties' lots were part of an approximately seventy-one acre undivided parcel known as Lot A-47, then owned by Rosemary Duggan and William Ladd (RDWL). In 1996, RDWL received approval from the Wilton Planning Board to subdivide an approximately eleven acre lot — Lot A-47-1 — from Lot A-47. The subdivision map shows a "farm road" beginning at Stage Coach Road on Lot A-47-1 running east/west along the newly created property line between Lot A-47-1 and Lot A-47. The road continues onto Lot A-47 where it traverses a stream over a bridge and then returns to Lot A-47-1 where it connects with a "cart road" running north/south across Lot A-47-1. The farm road allows access to the easternmost area of Lot A-47-1.

In August 1996, RDWL conveyed the newly-created Lot A-47-1 to David and Elizabeth Deysher by warranty deed. The deed created an appurtenant easement pertaining to the farm road that benefitted Lot A-47-1. The deed provides that RDWL's conveyance of Lot A-47-1, "[c]ontaining 11.291 acres," is made:

> Together with an access easement (such being an encumbrance running with the land constituting Lot A-47 on said plan of land) over a .386-acre area located on Lot A-47 (including a portion of the 8' farm road and bridge), as shown on said plan of land, for the limited purpose of allowing grantees, their heirs, successors and assigns access to and from that portion of the premises lying west of the stream spanned by said bridge and that portion of the premises lying east of said stream.

Thereafter, RDWL subdivided the remaining portion of Lot A-47 into two lots, Lot A-47-2 and Lot A-47-3. In 1997, RDWL conveyed Lot A-47-2 and Lot A-47-3, respectively, to new owners. Both conveyances were made subject to the easement RDWL had granted in 1996 to the Deyshers to use the farm road. The plaintiffs, William Ryan and Corinne Ryan, purchased Lot A-47-2 in 2018 by warranty deed.

In 1999, the then-owners of Lot A-47-3 and the Deyshers, who still owned Lot A-47-1, obtained approval from the Wilton Planning Board to reallocate the amount of land in their respective parcels by making a lot line adjustment, the effect of which was to remove from Lot A-47-3 approximately fourteen acres (Parcel A) and three acres (Parcel B) and add them to Lot A-47-1. Parcels A and B were then conveyed to the Deyshers by warranty deed. In 2018, the Deyshers transferred Parcel A back to the owners of Lot A-47-3 pursuant to another lot line adjustment. In 2019, the Deyshers conveyed Lot A-47-1 — consisting of the original tract and Parcel B — to the defendant.

After disputes arose between the plaintiffs and the defendant over the cutting of vegetation in the easement by the defendant's landscapers and the defendant's replacement of the bridge component of the farm road, the plaintiffs brought suit seeking, among other things, declaratory relief that "use of the access easement to provide access to Parcel B . . . is prohibited." The parties thereafter stipulated that the access easement issue was solely a legal argument to be decided on trial memoranda. After considering the parties' arguments and the applicable law, the trial court ruled in favor of the plaintiffs on this issue. The court found that the intent of the parties when the easement was created "was to allow the owners of Lot A-47-1 to use the farm road for the limited purpose of accessing other areas of Lot A-47-1 as that lot existed at the time of the conveyance." "As such," the court concluded, "the general rule—that an appurtenant easement cannot be used to serve a nondominant estate—applies" and, thus, the use of the access easement to provide access to Parcel B is prohibited. (Quotation omitted.) The trial court subsequently denied the defendant's motion to reconsider. This appeal followed.

II.     Analysis

On appeal, the defendant argues that the trial court erred: (1) when it ruled that the plaintiffs were entitled to an order declaring that the use of the easement to provide access to Parcel B is prohibited; and (2) when it failed to rule that Parcel B became part of the dominant estate as a matter of law. The defendant also asserts that the trial court's order was unreasonable or unjust because it denies her "reasonable access" to 3.2 acres of her property.

We first address whether the trial court erred in ruling that use of the easement to access Parcel B is prohibited. Resolution of this issue requires

that we interpret the language of the original deed establishing the easement at issue. The interpretation of a deed is a question of law, which we review de novo. Arell v. Palmer, 173 N.H. 641, 644-45 (2020). When interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. Id. at 645. If the language of the deed is clear and unambiguous, we interpret the intended meaning from the deed itself, without resorting to extrinsic evidence. See Appletree Mall Assocs. v. Ravenna Inv. Assocs., 162 N.H. 344, 347 (2011).

In 1996 when the easement was created, Lot A-47-1 consisted of approximately eleven acres as described in detail in the deed. The deed expressly states that the easement is "for the limited purpose of allowing grantees" access "to and from that portion of" the eleven-acre parcel "lying west of the stream spanned by said bridge" and that portion of the eleven-acre parcel "lying east of said stream." (Emphasis added.) Under the plain language of the deed, the trial court determined that "the intent of the parties when the easement was created was to allow the owners of Lot A-47-1 to use the farm road for the limited purpose of accessing other areas of Lot A-47-1 as that lot existed at the time of the conveyance." (Quotation omitted.) The trial court reasoned that, "[h]ad the parties intended to allow the grantees to use the easement to access areas beyond the conveyed premises, i.e. newly-acquired tracts in the future, they could have used words to that effect." See Arcidi v. Town of Rye, 150 N.H. 694, 701 (2004) (deed provided that the scope of the easement was "for the benefit of any and all property presently or hereinafter owned, occupied or used by Grantee"). The trial court further found that the land now referred to as Parcel B was owned in 1996 by RDWL as part of Lot A-47. Therefore, the court reasoned, "[a]bsent language to the contrary, it seems illogical that RDWL, as the then-owners of Parcel B, intended to grant the Deyshers the right to use the farm road to access other areas of RDWL's lot that were not being conveyed at the time."

The defendant asserts that the trial court "mistakenly overlooked exceptions to the general rule that an appurtenant easement cannot be used to serve a non-dominant estate," including when the addition of other land to the dominant estate does not overburden or change the easement. (Bolding omitted.) In addition, she argues that the "rule of reason" should be applied. We disagree.

As noted above, "[t]he general modern rule regarding the interplay between an easement appurtenant and a nondominant estate is that an appurtenant easement cannot be used to serve a nondominant estate." Ettinger v. Pomeroy Ltd. P'ship, 166 N.H. 447, 451 (2014) (quotation omitted); see Restatement (Third) of Property, Servitudes § 4.11 (2000) ("Unless the terms of the servitude . . . provide otherwise, an appurtenant easement . . . may not be used for the benefit of property other than the dominant estate." (bolding omitted)). "The purpose undergirding the rule is that the owner of the

3

easement appurtenant may not materially increase the burden of the easement upon the servient estate or impose a new or additional burden." Ettinger, 166 N.H. at 451 (quotation omitted). "The doctrine was intended to protect the servient estate from the use of an easement in a manner or to an extent not within the reasonable expectations of the parties at the time of its creation." Id. (quotation omitted).

"Our case law, however, does not foreclose the possibility of an easement benefiting a non-dominant tenement." Heartz v. City of Concord, 148 N.H. 325, 330 (2002). Rather, we have "aligned ourselves with courts that have concluded that the mere addition of other land to the dominant estate does not necessarily constitute an overburden or misuse of an easement." Ettinger, 166 N.H. at 452 (quotation and brackets omitted). In rejecting a bright-line rule, we implied that the determination whether an easement may be applied to a nondominant estate requires inquiry into the intent of the parties when the easement was created. Id. To determine that intent, we rely on the plain and unambiguous language of the deed that created the easement. Id.; see Heartz, 148 N.H. at 331 ("[T]he language creating a servitude should be interpreted to carry out the parties' intentions and the purposes of the servitude."); Lussier v. N.E. Power Co., 133 N.H. 753, 756-57 (1990) (explaining that if the language of the deed is clear and unambiguous, we will interpret the intended meaning from the deed itself without resort to extrinsic evidence).

As the trial court recognized, the primary consideration is the intent of the parties when the easement was created. See Ettinger, 166 N.H. at 453; Lussier, 133 N.H. at 756 ("The beginning and end of our inquiry is found in the words of the easement deeds."). Here, that unambiguous intent was that the easement be "for the limited purpose" of allowing access "to and from that portion of the premises" being conveyed — Lot A-47-1 consisting of 11.291 acres — "lying west of the stream" and "lying east" of the stream spanned by the bridge. Given that plain language, there was no need for the trial court to consider whether the inclusion of after-acquired land increased the burden placed on the easement. Cf. Flanagan v. Prudhomme, 138 N.H. 561, 574 (1994) ("An unrestricted right-of-way is subject to a determination of reasonable use." (emphasis added)); Soukup v. Brooks, 159 N.H. 9, 19 (2009) (where the deed created a "perpetual right and easement for all purposes," the use of the right of way to benefit other property may not be prohibited "unless such use imposed an unreasonable burden" on the servient lot (quotation, capitalization, and bolding omitted)); Heartz, 148 N.H. at 331-32 (although the deed allowed the easement to be used "at all times and for all purposes," we may determine "whether a particular use of an easement would create an unreasonable burden").

The defendant argues that the trial court erred when it "failed to address" her argument that Parcel B became part of the dominant estate in 2003 "as a matter of law." (Bolding omitted.) The defendant claims that through

reconfigurations of the properties and a series of property transfers subsequent to August 1996, the easement burdening Lot A-47-2 "was expanded to include Parcel B as part of the dominant estate." However, we agree with the plaintiffs that the defendant fails to point to "any agreement or consent by the [plaintiffs] or their predecessors to increasing the scope of the easement on their land." See Farmington Library Association v. Trafton, 84 N.H. 29, 31 (1929) ("A way appurtenant to land cannot be extended to be appurtenant to other land except by grant or prescription.").

Finally, the defendant asserts in her brief that the trial court "failed to rule" on her alternative argument "that she at least has an easement by necessity." However, counsel represented at oral argument that this appeal is limited to the defendant's assertion that a plain reading of the easement grants the defendant the right to use the easement to access Parcel B, and that "easement by necessity is not an argument" being made. Accordingly, we deem the "easement by necessity" argument waived. We have considered the defendant's remaining arguments, and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred; BASSETT, J., dissented.

**Timothy A. Gudas,
Clerk**

BASSETT, J., dissenting. In Ettinger v. Pomeroy Limited Partnership, 166 N.H. 447, 452 (2014), we explained that the mere addition of other land to the dominant estate does not necessarily constitute an overburden or misuse of an easement. The determination of whether an easement may be applied to after-acquired property requires inquiry into the intent of the parties when the easement was created. Ettinger, 166 N.H. at 452. Here, the easement is for the limited purpose of allowing access to the dominant estate. At the time the easement was conveyed by RDWL, Parcel B was owned by RDWL. Thus, RDWL retained the right to use the property that was subject to the easement in order to access Parcel B.

The trial court concluded, and the majority agrees, that in the deed creating the easement, the use of the phrase "for the limited purpose of allowing . . . access" plainly demonstrates the parties' intent to limit the use of the easement to access only the then-existing premises — that is, the property being conveyed by the deed. I disagree. In my view, particularly in light of the fact that RDWL retained Parcel B at the time the easement was created, the

5

limitation in the deed limits only the use of the easement — that is, the easement is to be used for access, not for other unrelated purposes.

As the majority acknowledges, we have rejected the bright-line rule set forth in the Restatement (Third) of Property, Servitudes that "[u]nless the terms of the servitude determined under § 4.1 provide otherwise, an appurtenant easement . . . may not be used for the benefit of property other than the dominant estate." Restatement (Third) of Property, Servitudes § 4.11 (2000). Thus, the relevant inquiry is not simply whether the deed expressly provides that the easement may be used to benefit property other than the dominant estate as it existed at the time of the conveyance. Rather, we should also consider whether the deed's language indicates an intention to prevent such use. See Soukup v. Brooks, 159 N.H. 9, 19 (2009).

In my view, the deed is ambiguous as to whether the "limited purpose of allowing . . . access" includes allowing access to after-acquired adjacent property such as Parcel B. The deed provides that the purpose of the easement is to provide access to the "premises," but is silent as to whether "premises" may include future changes resulting from lot line adjustments or the acquisition of adjoining property to the boundaries thereof. Cf. Ettinger, 166 N.H. at 452 (deed granting easement "to use" Winter Road Extension was ambiguous regarding whether easement could be used to benefit after-acquired property). Accordingly, I would vacate and remand for further proceedings. See id. at 453.

The purpose of the doctrine that an easement cannot be made to attach to other land which the owner of the dominant estate may subsequently acquire is to protect the servient estate from the use of an easement in a manner or to an extent not within the reasonable expectations of the parties at the time of its creation. See id. at 451. "The purpose undergirding the rule is that the owner of the easement appurtenant may not materially increase the burden of the easement upon the servient estate or impose a new or additional burden." Id. (quotation omitted). "[W]hen no significant change has occurred in the use of the easement from that contemplated when it was created, . . . the mere addition of other land to the dominant estate does not constitute an overburden or misuse of the easement." Carbone v. Vigliotti, 610 A.2d 565, 569 (Conn. 1992); see also Soukup, 159 N.H. at 19 (ruling that use of the easement to benefit a non-dominant tenement would not be prohibited "unless such use imposed an unreasonable burden on the servient . . . lot"). I would instruct the trial court on remand to consider, inter alia, the proposed use and the likely development of the dominant estate, see Ettinger, 166 N.H. at 453, and to determine whether on the facts of this case, the benefits of the easement may accrue to the after-acquired, adjacent property here at issue.

6

By construing the deed as unambiguously limiting access to the premises as the premises were configured at the time of the conveyance, the majority in essence adopts the Restatement view that the terms of the servitude must expressly permit the easement to serve any after-acquired property. As noted above, our cases reject that approach, concluding that the mere addition of other land to the dominant estate "does not necessarily constitute an overburden or misuse of an easement." Id. at 452 (quotation and brackets omitted). This is fully consistent with the purpose that undergirds the Restatement rule — preventing the owner of the easement from materially increasing the burden of the easement upon the servient estate or imposing a new or additional burden. See id. at 451.

In cases in which a deed expressly addresses after-acquired property, determining the parties' intent is straightforward. The difficulty arises when, as here, the deed is silent as to the parties' intent regarding after-acquired property. In many, if not most, such cases, the parties may not have contemplated one way or the other whether the easement should benefit a later addition of land to the dominant estate. The Restatement rule would reject allowing use of the easement in such cases, even when doing so would not materially increase the burden upon the servient estate or impose a new or additional burden, on the ground that the deed does not expressly permit the expansion. Our cases, on the other hand, also consider whether the deed's language demonstrates an intent to prevent the expansion. When the deed provides neither for nor against use of an easement for the benefit of land added to a dominant estate, we should look to factors such as the proposed use and likely development of the dominant estate to resolve the matter. This approach better fits with the purpose of preventing material increases in the burden upon the servient estate or the imposition of new or additional burdens. See id.

By construing the deed's silence regarding the effect of later adjustments of or additions to the boundaries of the "premises" as if the deed expressly addressed them, the majority reinstates the bright-line rule our cases reject. The result is to affirm the trial court's order "declaring that use of the access easement to provide access to Parcel B . . . is prohibited." (Quotation omitted.) The defendant alleges that her intent is to re-establish a pasture on her property, including Parcel B. She states in her brief that the trial court's order means that if she uses the easement to transport animals to her property, they cannot graze on Parcel B. If she herself wishes simply to access Parcel B, she is prohibited by the trial court's order from using the easement to do so — rather, she "would have to ford Mill Brook to access Parcel B." That such results may flow from affirming the trial court's order is further reason why we should vacate and remand.

For all the reasons set forth above, I respectfully dissent.